**Wilbur L. KEPHART,**
**Plaintiff–Appellant,**

v.

**INSTITUTE OF GAS TECHNOLOGY,**
**Defendant–Appellee.**

No. 79–2536.

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1980.
Decided Sept. 15, 1980.

Stephen G. Seliger, Chicago, Ill., for plaintiff–appellant.

James W. Gladden, Jr., Mayer, Brown & Platt, Chicago, Ill., for defendant–appellee.

Before PELL, Circuit Judge, NICHOLS, Associate Judge,* and CUDAHY, Circuit Judge.

PER CURIAM:

Plaintiff Kephart is an individual. This is not a class action. He is apparently an economist by training and profession. Defendant, hereinafter IGT, despite its name, is a profit–making business organization, which performs (we suppose normally in a consultant relationship), energy–related research for the government and private industry. Defendant employed plaintiff in June 1972 at his then age of forty–four as its Director of the Management Sciences Division. It discharged him in November 1974 at the age of forty–seven. He sued in district court alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 and ff. The district judge dismissed on motion because he had not given a 180 day notice, but this court held the requirement was not jurisdictional and

reversed. 581 F.2d 1287 (1978). The opinion states that the Act should be liberally interpreted to effectuate its purpose to end age discrimination in employment, but its contents do not otherwise affect the present controversy. The district court allowed extensive discovery, upon the completion of which defendant moved for summary judgment again, and the district judge granted the motion and dismissed the complaint. Our problem is to determine whether such a dismissal on summary judgment was proper. Certain state law claims asserted under pendent jurisdiction were also dismissed, but these are not before us and we do not consider them. We determine that the summary judgment was properly granted and we therefore affirm.

We read the district judge's Memorandum Opinion and Order, which is attached to and made a part of this opinion, as holding that the plaintiff's special factual allegations and proffers of proof, as distinguished from his conclusory allegations, do not present a triable issue of fact. The district judge necessarily, in view of his decision, rejected plaintiff's conclusion that IGT had a policy of discriminating against the aged, but he accepted at least *arguendo* all the subsidiary facts plaintiff put forward as evidence to support his assertion. Summary judgment is improper in a discrimination case–or any other–if it involves–as it often must–any weighing of conflicting indications of motive and intent. Here plaintiff had no indications of motive and intent, supportive of his position, to put on the scales for weighing. It was a wholly empty case. In such circumstances, summary judgment is proper.

We regret, however, that the parties did not put before this court, nor does the district judge, more specific information as to the nature of defendant's business, the nature of plaintiff's duties in that business, and the nature of the qualifications his job or jobs required. (He was shifted from one slot to another during his employment.)

---

* The Honorable Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

We gather by inference from the findings and facts of record that the business of defendant was consultancy and research in support of energy–related government and private business. We gather it was small and informally run. It had no direct labor force, nor did it produce, sell, or deliver materials. One might almost call it a "think–tank." Plaintiff for his first two years was Assistant Director of Management Sciences, a high level position that involved hiring and firing, supervision of the work of others, contacts with clients, and to some degree at least, getting and keeping business. The name of the division suggests that its work was efficiency or management engineering. In employing an outside "think–tank," companies and federal agencies often are influenced by what they know about the employee who will work to solve their problems. In August 1974, the Management Sciences Division was merged into the Engineering Research Division, under one Robert Rosenberg. Kephart was demoted in rank (but apparently not in pay) to senior economist, and relieved of all management responsibilities. From then on he got no new work, several projects he was already working on were killed, and he was advised to look for other work. He was allowed a decent interval, after which he was discharged. Top officials in IGT had long been dissatisfied with Mr. Kephart, as was Columbia Gas Systems, a major integrated natural gas producer, for whom IGT, through Mr. Kephart, was doing an important study.

No reference is made to any written job descriptions and we gather there were none. There was no written evaluation of an employee's performance except one of the most summary description when he was considered for a salary raise. Mr. Kephart got one wherein the evaluation said his work was "good" but the evaluator made clear in deposition testimony that he meant only satisfactory. Other top level employees got better raises at that time. It is clear that management expected to and did move persons in and out within the organization and on and off the payroll with perfect freedom according to how useful it appeared they were to the company in light of its then mix of business and how successful they were in pleasing the clients.

The district judge cited and relied on the classic formula in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) which prescribes a prima facie case for the aggrieved employee to make in a discrimination case. It involves four elements, one of which is that he was qualified for the job he sought. In case of a discharge, the employer's experience with him is the best test of that. If the prima facie case is made, the burden shifts to the employer to "articulate" a valid reason other than the protected characteristic for not hiring (or for firing). Of course, unsatisfactory performance is the best of reasons, and the district judge construed this to mean unsatisfactory as evaluated by the employer, a decision, if not a mere pretext, not to be second guessed by the court. The district judge well analyzes the case and we need not duplicate his effort as we incorporate his opinion in ours. He seems to hold that plaintiff did not make a prima facie case, but even if he did, dissatisfaction with his work and valid reasons for it were "articulated." We agree.

As regards the element of qualification in the prima facie case, we say a word more. In the case of a company like IGT, with the personnel practices that appear in this record, how do you decide who is qualified? Presumably Mr. Kephart's degrees in economics do not ipso facto qualify him, nor does the fact that IGT once hired him. Qualification obviously depends on the nature of IGT's business at any given time. One year an outgoing business–getter type might be best qualified, while in the next, after the business was got, it might be a cloistered scientist or mathematician. To ignore the shifting nature of qualification from time to time would make the qualification requirement meaningless and would encourage the harassment of small businesses having informal personnel practices, with unfounded suits. It is an obvious purpose of the Supreme Court in *McDonnell, supra*, and still more in *Board of Trustees*

*of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) to make the allocation of burden of proof responsive to the need to stop unsupported and malicious suits short of the necessity for a full dress trial. The district judge's use of summary judgment and his application of these burden of proof rules are sensitive and accord with law. He had, however, support in the record for squarely holding that the prima facie case was not made because plaintiff was not, on the date of his dismissal, "qualified" in the sense the formula requires, *i. e.,* his work was not satisfactory to his employers for reasons articulated by them, related to his capabilities, and unrelated to his age.

We note that plaintiff could and did depose defendant's top officials. Where extended depositions are taken, much of the strain in the resources of a party, that a full dress trial would require, has already been imposed. The purpose of summary judgment is to that extent frustrated. It may be that in the development of a case such as this it will be necessary to depose company officials in the search of a prima facie case before summary judgment, whenever the employer is a small private outfit that does not maintain a separate personnel department nor the elaborate rules, rituals, forms, regulations, procedures, reports, documents, and records, that characterize the personnel management of large companies and the government. The presence of these things will at least narrow the scope of inquiry by oral testimony and the ratio of company officials to be interrogated, compared to the whole number. This is one of the many drawbacks a company will have to incur under our present day laws because of being small, but no doubt it enjoys some advantages too. At any rate, the district judge has the right and duty to police the use of depositions for mere fishing expeditions and to favor the development of relevant facts by less costly means. We note plaintiff complains that the depositions were useless to him without the right of cross–examination at trial being accorded besides. Apparently he followed the common practice of just getting the deponent's

stories and not trying to shake them. We do not find this a sufficient reason for not deciding the case on summary judgment.

The district judge's opinion and order are attached hereto and incorporated by reference in this opinion.

AFFIRMED.

## APPENDIX

### MEMORANDUM OPINION AND ORDER

Wilbur L. Kephart, a former employee of the Institute of Gas Technology (IGT), brought this claim of age discrimination against his former employer. He alleges that his termination by IGT and its refusal to provide recommendations to future employers violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* and violated Illinois law. Defendant has filed a motion for summary judgment.

Extensive discovery has been taken in this case, making it possible to set out the facts not in dispute with confidence. Kephart was hired in June 1972 as Assistant Director of the Management Sciences Division of IGT. He was then 45 years old. His first assignment was as project manager on a study of gas allocation for the Columbia Gas System. It is uncontroverted that this project was not completed on time and that certain of Kephart's superiors were dissatisfied with his performance on it. Kephart's own version of his experience on this project, which the court will accept as true, describes it as an "education". He felt that the project could not be completed in time for the amount of money projected, and disagreed with what he thought was IGT's approach to research, which was "to do as much research activity within a given general area until all that money was spent and then they would go back and say, 'Here's the results we found to date. Now if you want us to do more, give us more money.'" There is no dispute as to the fact that conflicts developed between Kephart and his employer as a result of this project.

Other IGT employees made complaints about Kephart's performance on other projects during the two years he was Assistant Director of Management Sciences. Kephart was aware at the time of these complaints and knew that his superior, Jack Huebler, was dissatisfied with his performance. Although one complaint, about Kephart's presentation at a meeting, was, according to Kephart, based on a misunderstanding, it remains the case that at least one of Kephart's superiors was dissatisfied with what he thought had been a poor presentation at that meeting.

For each of the two years Kephart was an assistant director, he received a performance evaluation of "good". However, the person who made this evaluation, William Bodle, said that he thought Kephart was incompetent in some ways, that his work "left something to be desired," and that his work on the Columbia Gas project was "poor". Kephart also received a raise each year, though these raises were smaller than those given to almost all other members of the administrative staff.

In August, 1974, the Management Sciences Division of IGT was merged into its Engineering Research Division under the direction of Robert Rosenberg. Kephart was told at the time that there was dissatisfaction with the performance of the Management Sciences Division. He was demoted in this reorganization to the position of senior economist, and was relieved of all management responsibilities. Rosenberg did not give Kephart any new projects, and killed several of the projects Kephart had been working on. In November, Rosenberg left a note on Kephart's desk saying, "How is the job hunting going? Well?" Kephart claims that this was the first time he was informed that he had been expected to leave IGT.

Kephart did have advance warning, though, that he had been given six months to improve or he would have difficulty in retaining his job. Plaintiff does not contradict the testimony of Dr. Henry Linden, the Executive Vice President and Director of IGT, who states that he told Kephart prior to the August reorganization that he was being given six months to perform better, nor does plaintiff contest the testimony of Robert Rosenberg, who viewed the six month period as an "arrangement" leading to Kephart's discharge. Kephart was aware during the last months of his employment that it was important for him to prove himself. In his deposition at p. 163, he states, "I was working what I would call defensive action. I was trying to do what I could do to maintain my credibility, my professional credibility. Because, before I could go out and put my resume on the streets, I had to have some accomplishments."

Immediately after receiving the note from Rosenberg, Kephart talked to Linden who, Kephart claims, thought the note was a mistake. Four days later, however, Linden informed Kephart that he was to be terminated, stating that "There is just too much controversy about you here." Kephart was given an official notice of termination shortly thereafter.

After the reorganization of IGT, no one assumed all of the duties Kephart had performed as assistant director. However, several younger economists were hired after Kephart's termination to perform less important functions. Plaintiff asserts that younger men were given preferences in promotion as well as in hiring. He points to the treatment of Nick Biederman as an example. Though complaints had also been lodged against Biederman on several early projects, he was turned over to Rosenberg to be given another chance. This treatment was justified by Kephart's superior, Jack Huebler, by the fact that Biederman "was a very young man when he came to work for IGT. He went through many growing pains, as most college graduates do. He's a little of a beatnik." Rosenberg intended to make something out of Biederman, and did so. He apparently had no intention of giving Kephart another chance to improve, viewing the demotion as an "arrangement" leading to Kephart's discharge. At best, Rosenberg thought it highly unlikely that Kephart would improve sufficiently to jus-

tify his remaining with the company more than six months after the reorganization.

Plaintiff has also produced statistical evidence from an investigation by the Department of Labor showing that of the three people on the professional staff discharged between 1973 and 1975, all were over the age of 40. Most of those hired during that time were under 40. Kephart also states, as indicative of IGT's attitude, that he was told by Linden while he was an assistant director, that he should "act like what Rosenberg does, and that is to hire young people who are your marines who are going to do what you want and who are going to begin to work your problems for you. That's how I got the message that I should go after young people and train them to where they will work for me and be loyal to me." Kephart also stated that he was not allowed to hire a man with 20 years experience because "his technology was too old."

Plaintiff's burden of proof in an age discrimination case is to show that age was a factor in the decision to terminate him. Age need not have been the sole motivating factor but it must have been the " 'determining factor' in his discharge in the sense that 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Loeb v. Textron*, 600 F.2d 1003, 1019 (1st Cir. 1979). The courts have generally applied the order of proof test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Green*, the Supreme Court held that a Title VII plaintiff carries the initial burden of establishing a prima facie case of intentional discrimination. He may do so by showing that he belongs to the group allegedly discriminated against, that he was qualified for the job he sought, that he was not hired, and that the employer continued to seek applications for that position. *Id.* at 802, 93 S.Ct. at 1824. After this showing, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* The Supreme Court has recently made it clear that it is not the employer's burden to *prove* the absence of discrimination, only to state a

legitimate reason for the refusal to hire. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). After the employer has articulated a justification, the burden shifts back to the employee to prove that this reason was merely a pretext for the alleged discrimination. 411 U.S. at 804, 93 S.Ct. at 1825.

While the Sixth Circuit has held that the *Green* guidelines should not be simply borrowed and applied automatically in age discrimination cases, *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975), the courts have generally spelled out the requirements of a prima facie case with only slight variations on the *Green* theme. For example, the court in *Wilson v. Sealtest Foods Division*, 501 F.2d 84 (5th Cir. 1974), found that plaintiff had stated a prima facie case by showing that he was within a protected class, was doing "apparently satisfactory" work, was asked to take early retirement against his will, and was replaced by a younger person. Similarly, in *Loeb v. Textron, Inc.*, 600 F.2d at 1014, the plaintiff was held required to prove "that he was in the protected age group, that he was performing his job at a level that met his employer's legitimate expectations, that he nevertheless was fired, and that [the employer] sought someone to perform the same work after he left." The *Laugesen* court, on the other hand, stated that the plaintiff's burden is simply to "prove his claim that he was discharged because of his age." 510 F.2d at 313. And the Tenth Circuit, in *Toussaint v. Ford Motor Co.*, 581 F.2d 812, 815 (10th Cir. 1978), stated that "the plaintiff must prove more than simply the fact that he was within the protected age group and that he was adversely affected by a decision of management relating to conditions of employment."

Plaintiff cannot dispute that his employer has articulated a legitimate reason for his dismissal. His arguments address the question whether the employer will be able to *prove* that its reasons were legitimate. The Supreme Court indicated in *Sweeney* that it regards the distinction as an important one.

The court finds, therefore, that the employer's burden of rebutting the plaintiff's prima facie case has already been satisfied. The plaintiff, in addition to stating a prima facie case, must also show that IGT's stated reasons for firing him were mere pretexts for discrimination due to age. He must show that had it not been for his age, he would not have been fired.

The court must now determine whether there are material issues of fact remaining on these elements of plaintiff's case: whether plaintiff was in fact performing his work satisfactorily; whether his employer sought others to perform the work plaintiff had been doing; and whether the employer genuinely believed Kephart was not performing satisfactorily or was using this reason as a pretext for age discrimination.

According to the test formulated by the First Circuit in *Loeb v. Textron, Inc.*, 600 F.2d at 1014, the plaintiff must show as part of his prima facie case only that he "met his employer's *legitimate* expectations". This formulation raises the question whether the plaintiff would be permitted to show that the employer's demands were illegitimate in the sense of being unfair or arbitrary. Plaintiff's assertion that the company's goals in the Columbia Gas project were unrealistic or constituted an approach to research that Kephart considered unsound might be relevant under this approach.

The Age Discrimination in Employment Act, however, was not intended as a vehicle for judicial review of business decisions. *See Havelick v. Julius Wile Sons & Co.*, 445 F.Supp. 919, 926 (S.D.N.Y.1978). The question before the court is not whether the company's methods were sound, or whether its dismissal of Kephart was an error of business judgment. The question is whether he was discriminated against because of his age. Although an employer may not make unreasonable expectations, and must make the employee aware of just what his expectations are, beyond that the court will not inquire into the defendant's method of conducting its business. If Kephart was not doing what his employer wanted him to do, he was not doing his job. The plaintiff admits that conflicts developed between himself and his superiors as to how projects should be carried out. He does not contradict the affidavits and depositions of other IGT employees stating that they thought his work was unsatisfactory. In response, he offers only the judgments of some who thought his work was good. These contrary assessments of his performance do not impeach the legitimacy of his employer's expectations. Plaintiff does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his superiors.

On the second question, whether the employer sought younger people to perform Kephart's job, plaintiff has presented documents showing that several new younger economists have been hired by IGT. Although these new employees did work that Kephart could have done, there is no showing that they did the work that he was supposed to do either as assistant director or as senior economist. Kephart's was a position of more responsibility than appears to have been given to the new economists. In addition, plaintiff admits that the administrative responsibilities he had as assistant director were taken over by Glenn Seay, who was older than Kephart.

There are thus insufficient facts in dispute that would permit a finding that plaintiff has made a prima facie showing of age discrimination. Uncontradicted evidence reveals that he was not living up to his employer's expectations, and that he was not replaced in his particular position by persons younger than himself. Assuming arguendo that plaintiff could satisfy the initially required showing, the question would still remain whether his employer genuinely believed that he was not performing satisfactorily, thus negating any inference that the reasons given by IGT were pretextual.

Kephart himself has stated that there were three primary reasons for his discharge: First, he felt that "special interests" did not want certain of his projects

done; second, he thought there were people in IGT who were opposed to its having a Management Sciences Division; and finally, he thought that age played a role.

When asked about the reasons for age discrimination at IGT, Kephart stated that the company wanted people with less experience so that it would be able to control the way they performed projects. The company was looking for people who were, in Kephart's words, "impressionable and very good technically." Thus, Kephart's own statements reveal that the company's discrimination was not so much against age as against experience and independence. The statement by Linden relied on by plaintiff, that he should hire young people because they would do what he wanted, also reveals that the company prized loyalty as much as youth.

Even if the court accepts the argument that the company's bias against the independent–minded had a disparate impact on employees over the age of 40, that does not provide a basis for a finding that this particular plaintiff would have been retained, if he had been under 40. Aside from these few statements by IGT officials indicating a preference for the impressionable, only the statistics on hiring and promotion support Kephart's claim that the reasons given for his discharge were pretextual. These statistics, while of some aid in showing discriminatory intent, are not significant in age discrimination cases unless the disparities in treatment are quite large. See *Morelock v. NCR Corp.*, 586 F.2d 1096, 1107 (6th Cir. 1978); *Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299, 1319–20 (E.D.Mich. 1976). The reason such evidence is of little value in assessing discriminatory intent was explained by the court in *Laugesen v. Anaconda Co.*, 510 F.2d at 313: "It is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in." Moreover, the statistical evidence relied on by plaintiff is contradicted by personnel cards produced by defendant showing that most of the employees on Rosenberg's senior staff were over 40.

In short, even were there a dispute in this case about whether Kephart's work was good; there is no dispute about the fact that some of Kephart's superiors did not think his work was good. As to whether his employer's dissatisfaction was a pretext for discrimination, plaintiff has introduced no documents to justify a finding that any age discrimination existed in his case.

Summary judgment may not often be an appropriate means of resolving a question as elusive as the existence of discriminatory intent. Indeed, the court in *Wilson v. Sealtest Foods Division*, 501 F.2d at 86 went so far as to find that a directed verdict for an employer was improper where, "[i]t is possible that in the presentation of the employer's case, further evidence relating more directly to the requisite specific intent to discriminate might be adduced during cross–examination by the Appellant." However, this cannot be taken to mean that a directed verdict or summary judgment is never an appropriate means to resolve age discrimination cases. Indeed, summary judgment was granted in a case such as this one in *Brennan v. Reynolds Co.*, 367 F.Supp. 440 (N.D.Ill.1973). Plaintiff tries to distinguish *Brennan* by saying that the reasons given for the dismissal in that case were formulated contemporaneously, while those in this case are merely belated justifications. However, in this case there are the facts, in addition to subsequently stated justifications, that Kephart was demoted immediately prior to his termination, for reasons unrelated to his age, and that he was informed of dissatisfaction with his work.

In this case, unlike *Wilson*, plaintiff has not established a prima facie showing of discrimination. He should not, in such a case, be permitted to rely on the hope that he will be able to develop evidence on cross–examination of his opponent's witnesses. This is especially true where, as here, the party opposing the motion for summary judgment has already had a

chance to examine the movant's witnesses at their depositions. Under such circumstances, it is not unfair to grant summary judgment if no other evidence has been introduced indicating that their testimony is untrue. *Radio City Music Hall Corp. v. United States*, 135 F.2d 715 (2d Cir. 1943).

Plaintiff has failed to meet his burden of showing that there is a genuine issue of material fact remaining for trial. Defendant's motion for summary judgment is therefore granted. In view of the dismissal of plaintiff's federal claims, there is no longer pendent jurisdiction over his claims under state law. These, too, are dismissed.