765 F.2d 147
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CURTIS L. WRENN, PLAINTIFF-APPELLANT,
v.
THOMAS M. WERNERT, ET AL., DEFENDANTS-APPELLEES.
 NO. 84-3550
 United States Court of Appeals, Sixth Circuit.
 5/24/85
 
 ON APPEAL from the United States District Court for the Northern District of Ohio, Western Division
 Before: ENGEL and KEITH, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Curtis L. Wrenn, a fifty-four year old black male. filed this action against the County Mental Health Board of Lucas County, Ohio, and its Executive Director, Thomas M. Wernert. He alleged, under Title VII, 42 U.S.C. Sec. 2000e et seq. and 42 U.S.C. Sec. 1981, employment discrimination based on race; and Title VII retaliation for having filed a charge of employment discrimination against the Ohio Department of Mental Health. He also raised a retaliation charge under Title VI of the Civil Rights Act of 1966, 42 U.S.C. Sec. 2000d et seq. In a separate complaint, which was consolidated with the first by the district court, he charged di crimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634.
 
 
 2
 The parties engaged in discovery, including interrogatories, affidavits, requests for production and admission, and depositions of both plaintiff Wrenn and defendant Wernert. After hearing of oral arguments and consideration of the briefs of the parties, District Judge John W. Potter granted the motion of defendants for summary judgment on all claims and dismissed the consolidated complaints. Wrenn appeals. We affirm.
 
 I.
 
 3
 The defendant Board created the new position of Director of County Wide Mental Health Emergency Services in 1980 and advertised for applicants in the Wall Street Journal, the Toledo Blade, and other newspapers. Plaintiff Wrenn was one of thirty-five applicants who filed resumes. The Board assembled a screening committee, consisting principally of members of the advisory boards of County mental health centers and agencies, to screen applications. The members of the committee were not members or employees of the Board. The Board selected fifteen of the thirty-five resumes, including plaintiff's, for investigation by the committee. The committee interviewed six of the applicants, including plaintiff. Interviews were conducted by defendant Executive Director Wernert, who assessed management skills and experience, by Board staff members who assessed clinical and emergency skills and experience, and by the screening committee.
 
 
 4
 Following the interviews, Executive Director Wernert determined that defendant Wrenn and applicant W. Scott Fry had the best management experience and that Mr. Fry had the broader experience, given his relationships with lay boards. The screening committee determined that Mr. Fry was its first choice for the position, with plaintiff Wrenn and applicant Michael Dodson as alternates. Executive Director Wernert recommended Mr. Fry to the Board, and this recommendation was adopted.
 
 
 5
 The record shows that plaintiff Wrenn has an excellent background of experience. He graduated with a bachelor's degree in business from the University of Nebraska; obtained a certificate in health care administration from the University of Alabama; and received a master's degree in health care administration from the Medical College of Virginia.
 
 
 6
 Plaintiff served in various advisory, staff and command positions in the United States Army from November 15, 1950 until his voluntary retirement November 30, 1970. Since November 30, 1970 plaintiff served in various management positions in health care facilities including administrator for the Richmond Community Hospital; Associate Director of the University of Maryland Hospital; Administrator and Chief Executive Officer of the Anoka State Hospital; and Superintendent and Chief Executive Officer of the Toledo Mental Health Center. He has had experience in managing facilities treating mental health and psychiatric patients and in the delivery of emergency medical and psychiatric services, and has worked with 'lay boards of directors' at the Richmond Community Hospital, the University of Maryland Hospital and the Anoka State Hospital.
 
 
 7
 The record further shows that W. Scott Fry, who was employed for the position, also has excellent qualifications, including ten years of mental health experience, and at the time of his application was working toward a Ph.D. degree in Mental Health Policy and Administration at New York University. The resume of Mr. Fry filed with the Board is made Appendix A to this opinion. The record also contains the detailed resume of plaintiff, setting forth his excellent qualifications.
 
 II.
 
 8
 Plaintiff emphasizes that defendants, as moving parties in the motion for summary judgment, have 'the burden of showing conclusively that there exists no genuine issue as to a material fact.' Smith v. Hudson, 600 F. 2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979). He argues that his deposition and resume presented an issue of fact, emphasizing that the district judge was required to read the evidence and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. Id. He maintains that the district court ignored his resume and affidavit and focused only on his deposition testimony. The court held that the deposition testimony failed to establish a genuine issue of fact as to whether age was a factor in the Board's decision not to hire plaintiff.
 
 
 9
 Defendants argue that plaintiff's contention that he was better qualified than Mr. Fry fails to raise a genuine issue of fact. Contending that an employer is vested with wide discretion in hiring for management decisions, defendants assert that a fact-finder would have to find that plaintiff had 'far superior' qualifications to demonstrate that discrimination was the only possible explanation for the Board's decision.
 
 
 10
 Plaintiff relies upon his ten years of experience in hospital administration following his retirement from the Army.
 
 
 11
 Defendants note that plaintiff's 'experience lay for the most part in general hospital administration, with no special emphasis in the mental health field until his association with the Anoka State Hospital in 1978 and the Toledo Mental Health Center in 1979. Even in those positions he appears to have served as a hospital administrator and was not directly involved with community-wide networks of mental health services. His education likewise shows his concentration in hospital administration but no special training in the mental health field. Furthermore, Mr. Wrenn's work experience since leaving the armed services consisted of comparatively short-term positions: three years at Richmond Community Hospital, two years at Medical Center Hospitals in Norfolk, Virginia, three years at the University of Maryland Hospital, one year at Anoka State Hospital, and one year at the Toledo Mental Health Center.'
 
 
 12
 Plaintiff emphasizes that he established a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) by showing that he belonged to a racial minority, applied for a position for which he was qualified, was rejected despite his qualifications, and that the position remained open after his rejection while the employer continued to seek applications from persons with similar qualifications. He maintains that the pretrial stage is not the proper time for the requirement of proof. He notes that the court's function on summary judgment 'is not to try disputed issues of fact, but only to ascertain whether such an issue is present.' Abraham v. Graphic Arts International Union, 660 F.2d 811, 814 (D.C. Cir. 1981). The Abraham court held, however, that summary judgment disposition could be appropriate at the different stages of the McDonnell Douglas analysis, including proof that the defendant's rebuttal of the prima facie case was a pretext for discrimination. 660 F.2d at 815.
 
 
 13
 Plaintiff argues that the district court elected to credit the defendants' version of events in its opinion by holding that the Board's failure to check plaintiff's references did not establish discrimination. The court held: 'An employer often does not check references of a prospective employee until after a tentative decision has been made to hire that employee.' The court also rejected plaintiff's contention that his qualifications were superior, holding:
 
 
 14
 Plaintiff's perception of his qualifications fails to create a genuine issue of material fact on the question of whether defendants discriminated against plaintiff in their hiring decision. The decision maker's and not plaintiff's perceptions of his qualifications is relevant to defendant's hiring decision. See Smith v. Flax, 618 F.2d 1062 (4th Cir. 1980). As long as the employer does not use unlawful criteria, an employee is permitted to choose among equally qualified candidates. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981). Plaintiff has failed to establish that genuine issues of material fact exist regarding the use of unlawful criteria in defendants' hiring decision.
 
 
 15
 Plaintiff urges that the district court ruled on credibility issues in making this determination. Finally, stressing that defendant Wernert admitted that resumes were considered in the selection process, he argues the court should have considered the resumes in its opinion.
 
 
 16
 Defendants respond that it was not the court's function to evaluate the qualifications, but only to evaluate the employer's perception of the relative qualifications. A prima facie case of discrimination is rebutted where the employer articulates, not proves, a legitimate, nondiscriminatory reason for the employment decision. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Defendants argue that the material issue in this case is whether race, age, or retaliation played a part in the hiring decision. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66 (6th Cir. 1982). They emphasize that plaintiff offered no evidence to support his contentions with respect to this material issue. Acknowledging that plaintiff established a prima facie case, defendants contend that some evidence of a causal nexus between plaintiff's race and age and the employment decision is required. See Menefee v. General Electric Co., 548 F.Supp. 619 (N.D.Ill. 1982).
 
 
 17
 Defendants also assert that plaintiff presented no evidence that he was not hired in retaliation for his previous successful claim against the Toledo Mental Health Center. They contend that a causal link between an employer's knowledge of a discrimination claim and an adverse employment action is required. Whatley v. Metropolitan Atlanta Rapid Transit Authority, 632 F.2d 1325 (5th Cir. 1980). Defendants stress that plaintiff was considered throughout the selection process and was one of the top choices of the screening committee.
 
 
 18
 Defendants rely heavily on Mason v. Continental Illinois National Bank, 704 F.2d 361 (7th Cir. 1983), where a bank employee had alleged that she did not receive a promotion because of race discrimination. The Seventh Circuit affirmed the grant of summary judgment to the employer. The court ruled that even if the plaintiff established a prima facie case 'merely by showing that she was qualified and was rejected,' her prima facie case was rebutted by evidence that she was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason.
 
 
 19
 Since there was extensive evidence that Yarmolchuk was preferred for reasons having nothing to do with her race, any presumption of discrimination falls by the wayside. This is so even if Yarmolchuk was not really more qualified than Mason, so long as she was not less qualified. '[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicant does not in itself expose him to' liability. [Texas Dept. of Community Affairs v. Burdine, 450 U.S.] at 259.
 
 
 20
 Mason, supra, at 366.
 
 
 21
 The Mason court held further: 'Of course, to be entitled to summary judgment the defendants had to show that on the basis of the evidence obtained in pretrial discovery there was no reasonable possibility of the plaintiff's proving at trial that the reasons the defendants gave for rejecting her in favor of Miss Yarmolchuk were mere pretexts, the real reason being race; but we think the defendants carried their burden.' Id. The court emphasized that a black candidate is not entitled to a trial merely because the employer's reasons for selecting a white candidate might be a pretext. Id. at 366.
 
 
 22
 In Mason the white candidate selected had better evaluations than the balck candidate. Both had worked for the same employer. In the present case, the candidate selected did not possess clearly superior credentials, and the resumes were subject to different opinions. Arguably, the respective resumes could be considered as circumstantial evidence to prove, or at least raise an issue of fact, that the employer's articulated reasons for the employment decision were pretextual. The district court did not state that he was considering evidence of pretext, but emphasized repeatedly that plaintiff produced no evidence of discrimination.
 
 
 23
 In Stekl v. Motorola, Inc., 703 F. 2d 392, 393 (9th Cir. 1983), the court stressed that a party opposing a summary judgment motion must produce specific facts material to the claim, and that mere assertions of belief were insufficient. The court continued:
 
 
 24
 It is true that courts are generally reluctant to grant summary judgment in a case in which motivation and intent of a party are at issue. Douglas [v. Anderson, 656 F. 2d 528 at 535 (9th Cir. 1981]. However, Steckl produced no facts which, if believed, would have shown pretext and thus tendered an issue for trial. In this case, as in Kephart v. Institute of Gas Technology, 630 F. 2d 1217, 1218, 23 FEP Cases 1412 (7th Cir. 1980), the 'plaintiff had no indications of motive and intent, supportive of his position, to put on the scales for weighing.' Steckl's claims that Motorola failed to promote him because of discriminatory motivation and intent were 'wholly empty' and therefore insufficient to prevent summary judgment. Kephart, 630 F.2d at 1218.
 
 
 25
 This court has indicated that the use of summary procedures is proper in appropriate discrimination actions even when the plaintiff has established a prima facie case. '. . . [O]ne purpose of the allocation of the burdens of proof and production in Title VII and ADEA actions is to help district courts identify meritless suits and to stop them short of full trial. . . . The ADEA is not intended as a vehicle for general judicial review of business decisions.' Douglas, 656 F.2d at 525.
 
 
 26
 Defendants stress that Rule 56(e) requires a party opposing summary judgment to set forth specific facts raising a genuine issue for trial.
 
 
 27
 Defendants also rely on Locke v. Commercial Union Insurance Co., 676 F.2d 205 (6th Cir. 1982), where this Court affirmed a summary judgment for the defendant employer in an age discrimination case. The Court stressed that the plaintiff's conclusion that he was terminated because of his age was insufficient to create a prima facie case of discrimination. Id. at 206. In age discrimination cases, a prima facie case is one 'which when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.' Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.), cert. denied, ---- U.S. ----, 104 S.Ct. 352 (1983).
 
 District Judge Potter held:
 
 28
 The Court finds plaintiff's testimony at his deposition fails to establish that genuine issues of material fact exist on the question of whether age was a determining factor in defendant Board's decision not to hire plaintiff. Plaintiff merely states his conclusion that he was not hired because of his age. These statements of plaintiff are insufficient to survive defendants' summary judgment motion. Locke v. Commercial Union Insurance Co., supra; Ackerman v. Diamond Shamrock Corp., supra; Sahadi v. Reynolds Chemical, supra. The Court will grant defendant Board's motion for summary judgment on plaintiff's age discrimination claims.
 
 
 29
 Plaintiff's Title VII claims are also based upon plaintiff's personal conclusion that he was not hired for the position of Director of County-Wide Mental Health Emergency Services because of his race.
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 Once a plaintiff has established a prima facie case the burden of going forward with the evidence shifts to the defendant. Defendant must articulate some legitimate non-discriminatory reason for the employer's rejection. Plaintiff then must be given the opportunity to prove that the reason given by defendant was a pretext for discrimination. Despite the shift to defendant to articulate some legitimate non-discriminatory reasons, plaintiff retains the ultimate burden of persuasion. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).
 
 
 33
 Even if the Court were to find that plaintiff had established a prima facie case, the Court finds that no genuine issue of material fact exists that defendants have set forth a legitimate non-discriminatory reason for not hiring plaintiff. The affidavit and deposition testimony of defendant Wernert establishes that plaintiff was not selected for the position of Director of County-Wide Mental Health Emergency Services because all those involved in the interviewing process felt that Mr. Fry was most qualified for the position. An employer seeking to fill a managerial position can choose the applicant which the employer believes is most qualified without creating an inference of discrimination. See Mason v. Continental Illinois National Bank, 704 F.2d 361 (7th Cir. 1983).
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 The Court will also grant defendants summary judgment on plaintiff's 42 U.S.C. Sec. 1981 claims. This Court's analysis set forth infra regarding plaintiff's Title VII claim is applicable to plaintiff's 42 U.S.C. Sec. 1981 claim. See Baldwin v. Birmingham Board of Education, 648 F.2d 950 (5th Cir. 1981). In addition, in order to prevail in a 42 U.S.C. Sec. 1981 action, a plaintiff must establish intent to discriminate. See General Building Contractors Association v. Pennsylvania, 458 U.S. 375 (1982). The Court finds that no genuine issues of material fact exist on the issue of defendants' intent to discriminate against plaintiff. Plaintiff has produced no evidence of intentional discrimination against him.
 
 
 37
 Finally, the Court will grant defendants summary judgment on plaintiff's claims of retaliation under Title VII.
 
 
 38
 * * *
 
 
 39
 * * *
 
 
 40
 The affidavit of Thomas Wernert and the affidavit of William Prebe, a member of the Screening Committee, both indicate that the fact that plaintiff had filed discrimination charges against the Ohio Department of Mental Health was not considered during the selection process. In light of these affidavits, the Court finds that plaintiff's deposition testimony fails to raise genuine issues of material fact regarding his claims of retaliation.
 
 
 41
 Upon consideration of the oral arguments and briefs of counsel and the entire record, we agree with District Judge Potter that plaintiff has not presented any genuine issue of material fact. The judgment of the district court is affirmed. No costs are taxed. The parties will bear their own costs in this Court.
 
 Appendix A
 Resume of W. Scott Fry
 EDUCATION
 1963-1967
 Gettysburg College
 Gettysburg, PA-17325
 Major: Economics/Business Administration
 
 42
 Degree: B.A.
 
 1967-1968
 University of Missouri
 Columbia, Missouri-65201
 Major: Public Administration
 Minor: Psychology
 
 43
 Degree: M.A.
 
 1968-1969
 University of Missouri
 Major: Public Administration
 
 44
 Degree: 18 credits toward a Ph.D.
 
 January 1979 to Present
 New York University (Part-time)
 New York, NY-10003
 
 45
 Major: Mental Health Policy and Administration
 
 
 46
 Degree sought: DPA (Doctorate in Public Administration)
 
 PREVIOUS EMPLOYMENT
 January 1980 to Present
 York County Mental Health Center
 York Hospital
 
 47
 1001 South George St.
 
 York, PA-17403
 Position: Executive Director
 Duties include the following:
 
 48
 1. Assume overall responsibility for providing a strong program of clinical supervision, in part by arranging for psychiatric supervision of staff, including one-to-one supervision, review of all treatment plans, and an on-going program of in-service training.
 
 
 49
 2. In consultation with psychiatrists and other clinical supervisory personnel, monitor professional performance and provide an annual evaluation for each employee with recommendations to the Board of Directors.
 
 
 50
 3. Responsible for budget preparation, records system and control, the financial liability determination function, and the collection and dissemination of financial/statistical information, as required by MH/MR and the Department of Public Welfare.
 
 
 51
 4. Responsible for the development of more suitable budget support systems through private foundations, local membership drives, and grant applications.
 
 
 52
 5. Develop policies and procedures designed to guarantee payment for services from MH/MR, Department of Public Welfare, and other third-party payors.
 
 
 53
 6. Recommend to the Board the selection and separation of staff members.
 
 
 54
 7. Assume the overall responsibility for the efficient operation of the Center's business affairs, including coordination of office procedures, billing on a timely basis, provision for adequate facilities, equipment, and supplies.
 
 
 55
 8. Responsible for evaluating the effectiveness of the program, including cost effectiveness.
 
 
 56
 9. Arrange for consultation/education services to community agencies and citizens.
 
 
 57
 10. Participate in community planning for the mentally ill by cooperating with other human services agencies.
 
 
 58
 11. Maintain communication with regional, state, and national mental health organizations for the purpose of gaining knowledge of methods, procedures, and programs utilized in other communities.
 
 
 59
 12. Coordinate the functions of the various Board committees and in conjunction with them plan, develop, and administer programs and services.
 
 January 1977 to January 1980
 York County Mental Health Center
 York Hospital
 
 60
 1001 South George St.
 
 York, PA-17403
 Position: Assistant Director
 January 1975 to January 1977
 York County Mental Health Center
 
 61
 Position: Administrator of Psychiatric Emergency Services, Adult Outpatient Services, Aftercare, and Consultation and Education
 
 August 1970 to January 1975
 York County Mental Health Center
 Position: Therapist
 June 1973 to present
 
 62
 York Campus of Pennsylvania State University
 
 
 63
 Position: Part-time Professor of Political Science
 
 September 1969 to June 1970
 Lakeland College
 Mattoon, Illinois
 
 64
 Position: Instructor of Political Science/Economics
 
 PROFESSIONAL AFFILIATIONS
 
 65
 Pennsylvania Association of Community Mental Health/Mental Retardation Providers
 
 
 66
 National Council of Community Mental Health Centers
 
 Council of Agency Executives (York County)