**Ruth Y. MASON, Plaintiff-Appellant,**

**v.**

**Samuel PIERCE, Secretary, Department of Housing and Urban Development, et al., Defendants-Appellees.**

**No. 84–2642.**

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1985.

Decided Oct. 9, 1985.

---

James T. Fitzgibbon, Lockwood, Alex, Fitzgibbon & Cummings, C. Michael Kendall (Law Student), Chicago, Ill., for plaintiff-appellant.

Mary S. Rigdon, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge and GRAY, Senior District Judge.*

---

* The Honorable William P. Gray, Senior District Judge of the Central District of California, is sitting by designation.

CUMMINGS, Chief Judge.

Plaintiff Ruth Mason was employed by the Department of Housing and Urban Development (HUD) on November 2, 1980, as an accounting technician in the Chicago Regional Accounting Division subject to a probationary period of one year. She was discharged on July 24, 1981, and in February 1984 she filed a four-count complaint against Samuel Pierce, Secretary of HUD; three of HUD's Chicago officials; and a HUD instructor who had supervised plaintiff's training in New York. Plaintiff sought reinstatement, back pay, punitive damages and declaratory relief. Defendants filed a motion for dismissal or summary judgment, and on June 29, 1984, the district court granted summary judgment to defendants and simultaneously filed an 8-page opinion in their favor (Def.App. 66–75; Pltf.App. A–3—A–10).

Count I of the amended complaint (Def. App. 12–14) was directed against the HUD Secretary and stated that plaintiff was terminated "either without cause or for improper cause, in violation of her rights" on July 24, 1981, and that subsequent administrative reviews of the discharge were improper. Plaintiff complained that she was discharged because of her black race and gender in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e).

Count II asserted that plaintiff was discharged because she was 54 years old, allegedly in violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.). Count II states that plaintiff exhausted her administrative remedies and was challenging the April 13, 1983, final decision of HUD's Director of Equal Employment Opportunity that plaintiff was not terminated because of her race, sex, or age (Def.App. 22–27). Again Secretary Pierce was the only defendant named in this Count (Def.App. 14–15).

Count III is also only against Secretary Pierce and requests declaratory relief under 28 U.S.C. § 2201 that "because of her

race and gender and age she [Mason] was singled out for unfair application of employment-rating standards in contravention of 5 U.S.C. § 4303[1] and was ultimately wrongfully discharged" (Def.App. 15–16).

Count IV asserts that plaintiff's discharge was retaliatory in violation of First Amendment rights as a result of her attempt to protest her discharge. Unspecified punitive damages were sought against four named HUD employees, but not against Secretary Pierce. (Def.App. 16–18).

In support of their motion for summary judgment, the defendants submitted the record compiled by HUD from the time plaintiff, at the suggestion of HUD, contacted a HUD Equal Employment Opportunity counselor[2] on July 23, 1981, until the above-mentioned final HUD decision of April 13, 1983, that Mason had not been terminated illegally. The EEO counselor reported his lack of success in attempting to resolve plaintiff's problem in September 1981, resulting in her filing a complaint of discriminatory termination with the Equal Employment Opportunity Commission on October 1, 1981. Since she did not proceed with her complaint or a proffered hearing, the EEOC sent its file on Mason's case to HUD about January 21, 1983. HUD proceeded to render a final adverse decision based upon the Report of Investigation by the EEOC. On April 13, 1983, HUD's Director of Equal Opportunity concluded that the evidence did not support Mason's complaint based on age, sex and racial discrimination (Def.App. 26).

Defendants also submitted two affidavits of Charles Loef, who was the official responsible for hiring, supervising and terminating plaintiff. The district court was also furnished with all documentation relat-ed to plaintiff's employment from the time of her appointment, including warning letters about her poor job performance, her error-replete work sheets from December 1980 through June 1981, and her July 8, 1981, termination notice, terminating her effective July 24, 1981, for "lack of competence" and "unsatisfactory performance" due to inaccuracy in recording figures and making arithmetical calculations. The defendants' submission to the district court also included excerpts from plaintiff's official personnel file detailing her past work history.

Although plaintiff submitted an affidavit in response, it contained only unsupported conclusory statements and did not demonstrate that she met HUD's legitimate job performance expectations.

I

■ Summary judgment was proper with respect to the first three counts of the amended complaint. Plaintiff has not made out a prima facie case of employment discrimination on the grounds of age, race and sex under the standards established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 and followed by this Court in, *e.g.*, *Mason* [not this plaintiff] *v. Continental Illinois National Bank*, 704 F.2d 361, 366 (1983), and *Davis v. Weidner*, 596 F.2d 726, 729–733 (1979). Plaintiff's reply brief seemingly contends that defendants urged and the district court erroneously ruled that she had not met her burden of proof. Contrariwise, defendants have only urged that plaintiff has not met her initial burden of persuasion by the preponderance of the evidence that there was a prima facie case of discriminatory treatment (Br. 24–26) and Judge Moran so held (Def.App. 71–73).[3]

---

**1.** 5 U.S.C. § 4303 details the procedures whereby an agency may reduce in grade or remove an employee for unacceptable performance but by its own terms does not apply to probationary employees such as Mason, *id.* § 4303(f)(2), and is not even mentioned in Mason's appellate briefs.

**2.** The termination letter also advised plaintiff she could appeal substantive or procedural ir-regularities to the Merit System Protection Board (Def.App. 43) but Mason contacted only the HUD's EEO counselor.

**3.** For a rewarding discussion of burdens of persuasion and burdens of proof, together with the shifting burdens in Title VII cases, see T.J. Campbell, *Regression Analysis in Title VII Cases: Minimum Standards, Comparable Worth, and Other Issues Where Law and Statistics Meet*, 36

Under *McDonnell Douglas* a plaintiff must show that (1) she belongs to the protected class, (2) she was qualified for the position, (3) she suffered an adverse employment decision, and (4) the employer sought to replace her. Three of the essential elements of a prima face test are present because plaintiff was a 54-year-old black woman, terminated from her probationary position on July 24, 1981, and replaced by a white woman in her 70's.[4] Plaintiff, however, cannot prevail with respect to Counts I, II and III because the record does not show that she was qualified for the position as an accounting technician. The record does show that plaintiff was discharged by the Veterans Administration in January 1980 and was unemployed until HUD chose her from a register of eligible applicants from the United States Civil Service Commission. In her HUD appointment declaration, plaintiff did not reveal that she had been discharged by the Veterans Administration. Because plaintiff had applied for a HUD accounting technician position in the GS–525 series, whereas she had previously been a Veterans Administration time and leave clerk in the GS–590 series, she was required to serve a probationary period of one year in the HUD position. 5 C.F.R. § 315.801(a)(1) and Federal Personnel Manual, subch. 8, § 8–2 (Def.App. 6, 8 and 44). In this capacity, plaintiff was required to record payments and strike accurate running balances on individual account ledgers (Def.App. 29). Because the Chicago regional accounting operation of HUD was being reorganized in 1980, plaintiff and Peter Lowen, a 60-year-old white male, received their instructions in a three-month training period in New York from November 1, 1980, to February 3, 1981. In December 1980 defendant Loef, HUD's Chicago regional accounting director advised plaintiff and Mr. Lowen that their performance was unacceptable and on January 13, 1981, both employees received a warning letter from defendant Kathy Fallon of continuing poor performance. Lowen thereupon resigned and was replaced by Jan Brown, a satisfactory white female, but plaintiff continued in her employment.

On February 23, 1981, plaintiff received another memorandum about her unsatisfactory job performance, pointing out her errors and offering assistance. On May 19, 1981, defendant Loef wrote her that "without further improvement you may easily fall outside an acceptable error rate" (Def.App. 41). About June 30, 1981, during plaintiff's absence on leave, both the Regional Administrator and the Central Office of HUD received inquiries about the reasons for late receipt or absence of "Section 8 quarterly payments."[5] A review of the backlog showed that plaintiff had not processed 100 Section 8 payment requests. Therefore, on July 8 a termination notice was sent to plaintiff effective July 24.

After plaintiff appealed her termination administratively to Loef and cited Jan Brown as a comparative employee, Loef reviewed their work products and found that Brown's work product was 75% higher with many fewer errors than plaintiff's. Loef's affidavit concluded that neither plaintiff's age nor race were factors in terminating plaintiff, but that instead she "simply did not fulfill the qualifications for the technician's position" (*id.* at 31). The affidavit also reported that her replacement was a white female in her seventies who performs the work satisfactorily. Since the replacement was an elderly female, Mason's charge of age and sex discrimination could not stand. Therefore Loef did not uphold the appeal. The race discrimination charge was also rejected because in 1980 this regional accounting office had hired 2 white and 6 black account-

Stanford Law Review 1299, 1308–1309, 1312–1322 (1984). See also *Andre v. Bendix Corp.*, 774 F.2d 786, 793 (7th Cir.1985) (similar discussion).

4. The replacement was in her seventies (Def. App. 31) although the district judge's opinion said sixties (*id.* 69).

5. Section 8 payments are rental assistance payments provided owners of lower-income housing pursuant to 42 U.S.C. § 1437f.

ing technicians, and in 1980–1981 employed 9 black and 7 white accounting technicians. Moreover, in 1981, of this group plaintiff was the only black discharged while one white (Peter Lowen) resigned after both received incompetency warnings. (*Id.* at 26, 29).

A later affidavit of Loef summarized Mason's errors during her probationary period as "inaccurate math" and attached documentation of some of her "compounded errors." He concluded by explaining that during her probationary period, Mason was given every consideration available to a probationary employee as prescribed by regulations and handbooks applicable to HUD.

The foregoing summary of the record conclusively demonstrates that plaintiff was not qualified for the position in question, so that plaintiff did not make a prima facie case of employment discrimination according to the standards in *McDonnell Douglas Corp., supra, La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405 (7th Cir.1984), *Huhn v. Koehring Co.,* 718 F.2d 239 (7th Cir.1983), and *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980) (*per curiam*). Consequently, Judge Moran properly entered summary judgment in favor of defendants with respect to the first three counts of the amended complaint. The rule laid out in *La Montagne,* 750 F.2d at 1409, *Huhn,* 718 F.2d at 243–44, and *Kephart,* 630 F.2d at 1220, 1222–23, that (absent discriminatory intent) an employment discrimination suit is an inappropriate forum in which to question an employer's business judgment was fully satisfied here since plaintiff simply did not meet HUD's legitimate job performance expectations. Mason's sole affidavit admits errors, warnings and late quarterly payments but blames others.[6] Her affidavit does not de-

tract from the entry of summary judgment for defendants because the record shows that she did not meet HUD's legitimate expectations and accordingly failed to make a prima facie case under our *Kephart* and *Huhn* decisions. Consequently Judge Moran properly entered summary judgment for defendants with respect to the first three counts of the amended complaint.

## II

■ As stated earlier, Count IV of the amended complaint against the four individual defendants asserts that plaintiff was the victim of a retaliatory discharge in violation of her First Amendment rights "as a result of her attempt to protest the wrongful treatment to which she was subjected." Plaintiff did not file a charge of discriminatory retaliation with the EEO counselor or HUD's Director of Equal Opportunity nor with the Equal Employment Opportunity Commission, alleging violations of Section 703 and 704(a) of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2 and 2000e–3(a)). She was cognizant of her administrative remedies because she pursued them as to her claims of age, race and sex discrimination. But while 29 C.F.R. Ch. XIV dealing with the Equal Opportunity Commission commits complaints of reprisal such as alleged in Count IV to the EEOC (29 C.F.R. §§ 1613.261–1613.262), plaintiff never brought such a complaint to the EEOC even though Section 717(c) of Title VII of the Civil Rights Act and 29 C.F.R. § 1613.-281 provide that step as a pre-condition of filing a civil action in a federal district court[7] and even though the July 8, 1981, termination notice advised her to contact an EEO counselor if she thought her discharge was for discriminatory reasons (Def.App.43). She should not be able to

---

**6.** The affidavit was attached to her memorandum in response to defendants' motion to dismiss and appears in R. Item 2.

**7.** *Brown v. General Services Administration,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402; *Sims v. Heckler,* 725 F.2d 1143, 1144–46 (7th Cir.1984). Mason has not

claimed to fall within either exception contained in 29 C.F.R. § 1613.214(a)(4) permitting filings with the EEOC later than 30 days after discharge. *Wolfolk v. Rivera,* 729 F.2d 1114, 1117–19 (7th Cir.1984). Indeed she never filed a Count IV claim with the EEOC.

bypass her administrative remedies by initially filing a lawsuit for punitive damages under the First Amendment for retaliatory discharge. *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648. It makes no difference that as a probationary employee plaintiff may not have had all the administrative remedies Bush had for redress of improper action. See 462 U.S. at 385, 103 S.Ct. at 2414–15. Here she should have sought recourse through HUD's equal employment opportunity officer and then the Equal Employment Opportunity Commission, which had the power to order reemployment, back pay, retroactive promotions, attorney's fees and costs. 29 C.F.R. § 1613.271. Her failure to do so prevents her from raising this afterthought claim in the federal courts. *E.g., Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402; *Sims v. Heckler,* 725 F.2d 1143, 1144–46 (7th Cir.1984).

The summary judgment in favor of defendants is affirmed.