Thomas H. McDANIEL, et al,
Plaintiffs,

v.

MEAD CORPORATION, d/b/a
Lynchburg Foundry, et al,
Defendants.

Civ. A. No. 83–0550–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

May 29, 1985.

Donald W. Huffman, Bird, Kinder & Huffman, Roanoke, Va., for plaintiffs.

Clifton A. Woodrum, Dodson, Pence, Viar, Young & Woodrum, Roanoke, Va., Charles M. Rice, Kilpatrick & Cody, Atlanta, Ga., for Lynchburg Foundry.

Mark E. Feldman, William H. Lindsey, Eggleston, Glenn & Feldmann, Roanoke, Va., for Mead Corp.

## MEMORANDUM OPINION

KISER, District Judge.

This action arises under the Age Discrimination and Employment Act, 29 U.S.C. § 621, *et seq.*, (the "ADEA"). Plaintiffs Thomas H. McDaniel, Ersal Alderman, Troy M. Hawley, Iris W. Sayers, and Jean R. Stokley are former employees of the Lynchburg Foundry Company which is a subsidiary of the Mead Corporation. Plaintiffs allege that they were discharged by the Defendants in October, 1982, based upon their ages in violation of the ADEA. Defendant Lynchburg Foundry has moved for summary judgment alleging that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Defendant Mead Corporation has joined in this motion, and has also alleged additional grounds for summary judgment on its behalf.

### I. *Statement of Facts*

#### A. *Reductions-in-Force at Lynchburg Foundry*

Lynchburg Foundry is a corporation engaged in the manufacture of cast metal products. Lynchburg Foundry operates several facilities in and around Lynchburg, Virginia, and one plant in Radford, Virginia. All five Plaintiffs were employed at the Radford plant prior to their termination.

Before 1977, Lynchburg Foundry operated three separate facilities at the Radford plant: the Shell Foundry, the Pipe Foundry, and the "Special" Foundry. In late 1977, Lynchburg Foundry closed the Special Foundry due to decreased demand and opened a new plant, the Medium Castings Foundry ("MCF"). One of the chief customers for MCF products was the Caterpillar Tractor Company. At this time, the Radford work force consisted of approximately 1,425 total employees. Of these employees, 160 were "salaried" employees; the remainder were "hourly" employees.

The terms and conditions of employment for Lynchburg Foundry's hourly employees are governed by a collective bargaining agreement, which provides seniority rights in termination decisions. All five Plaintiffs were salaried employees, and were not covered by a collective bargaining agreement or any other contract. Although Lynchburg Foundry managers usually view seniority as a factor favoring the retention of a salaried employee, they are not required to do so.[1]

In March of 1980, changing customer demand resulted in the closing of the Pipe Foundry. The Lynchburg Foundry Corporation terminated several hundred employees, including salaried personnel. Proportionately more salaried employees under the age of 40 were terminated in the

---

1. Salaried employees are classified as either "exempt" or "non-exempt" depending upon whether they are subject to federal and state wage-hour laws. For example, mid to upper management employees are exempt while clerks and clerical staff are non-exempt.

March, 1980 force reduction than salaried employees over the age of 40.

Economic conditions continued to decline in the following years, and Lynchburg Foundry undertook force reductions in September, 1980; December, 1980; April, 1981; and May, 1982. Each of these force reductions impacted more severely on salaried employees under the age of 40. For example, in the May, 1982 force reduction Lynchburg Foundry terminated 16% of its under-40 salaried work force, as compared to 6% of its over-40 salaried work force. By May, 1982, the work force at the Radford plant had been cut in half: from 1,425 employees in July, 1979, to 707 employees in May, 1982. Over one-third of the salaried work force had been terminated: from 160 in July, 1979, to 99 in May, 1982.

By the Fall of 1982, a continued decline in customer demand coupled with an impending strike at the Caterpillar Tractor Company resulted in a management decision to close the Medium Castings Foundry. The closing of the MCF resulted in the termination of several hundred additional employees, including 27 salaried employees. All five Plaintiffs were among the 27 salaried employees terminated in this force reduction. According to Donald Carson, the Radford Plant Operations Manager, the closing of the MCF and these force reductions were necessary for the Radford plant to remain in business. Of the 27 salaried employees terminated in October, 1982, 15 were under the age of 40 (representing 42% of the under-40 salaried workforce), and 12 were over the age of 40.

### B. The Individual Employment Decisions

#### 1. Thomas E. McDaniel.

McDaniel began work at Lynchburg Foundry in March of 1965. He was promoted to the position of Maintenance Supervisor in the Maintenance Department in 1969. He remained in that position until his termination in October, 1982. McDaniel's immediate supervisor from 1976 to 1982 was Robert Coalson (age 44). There were a total of seven maintenance supervisors employed in October, 1982: David Forbes (age 36), Jack Ratcliffe (age 34), Clarence Sowers (age 51), Willard Jones (age 45), Thomas McDaniel (age 55), David Byrd (age 32), and George Valach (age 44). All seven maintenance supervisors provided general supervision to the hourly maintenance employees. In addition, Jones and Byrd were certified to provide technical supervision to electricians, and Forbes and Ratcliffe were certified to provide technical supervision to machinist-mechanics. Their additional training and certification had come through the joint Lynchburg Foundry/New River Community College Craft Apprenticeship Program. Neither McDaniel, Sowers, or Valach had any specialized training or qualifications in electrical or machinist-mechanic work beyond that acquired on the job.

When the Medium Castings Foundry was closed, three maintenance shifts were eliminated and, accordingly, three maintenance supervisors had to be terminated. Jones was retained as an electrical specialist. Byrd was retained to continue on a special electrical assignment at the Shell Foundry. The Foundry also wished to retain at least one certified machinist-mechanic specialist. Forbes was determined to be the better qualified so he was retained and Ratcliffe was terminated. Of the three remaining supervisors, Sowers was retained because of his seniority (30 years). McDaniel and Valach were terminated.

#### 2. Troy M. Hawley.

Hawley's last continuous service with Lynchburg Foundry began in 1958 when he was employed as an hourly employee in the Special Foundry. Hawley transferred into the Storeroom Department in approximately 1970. The Storeroom Department is responsible for ordering, stocking, and distributing all parts and materials used by Lynchburg Foundry in the production of castings. Hawley's first position in the Storeroom Department was window attendant. In 1974, he was assigned the position of messenger/mail clerk which he held until his termination in October, 1982. The

messenger's duties included picking up and delivering mail, distributing interoffice mail, and running errands.

There were nine salaried jobs in the Storeroom Department in 1981. By October, 1982, three of these positions had been eliminated, and the Foundry decided to eliminate three additional salaried positions. The head of the department, Don Wood (age 44), was retained along with Gerald Duncan (age 45), another exempt level supervisor who had been Mr. Wood's assistant for approximately 8 years. The only non-exempt salaried employee retained was Marshal Wirt (age 41). Wirt was a salary grade "D", who had operated the storeroom computer and handled bookkeeping. Hawley's messenger position, a salary grade "A" (the lowest salary grade in the Foundry) was eliminated. Certain of the messenger's duties, such as personal delivery of the mail, were no longer performed. Other responsibilities were assumed by Foundry employees on as-needed basis.

### 3. Iris W. Sayers.

Sayers was employed by the Foundry in September, 1968. For several years prior to her termination she held the position of Senior Process Clerk in the Payroll Services Department. This was a non-exempt clerical position. As a Senior Process Clerk, Sayers was responsible, along with other clerks, for processing employee time cards and determining the amount of pay for each employee. Sayers' supervisor was Gerald Lyons, the Payroll Supervisor. The staff of the Payroll Services Department had been significantly decreased during earlier force reductions, and the positions of three Payroll Services Clerks had been eliminated. Management decided to eliminate two of the final three Payroll Services Clerk positions in October, 1982, leaving only one Payroll Services Clerk employed.

The three remaining clerks were Sayers (age 58), Scotty Smith (age 42), and Linda Cecil (age 33). Lyons felt that Sayers was the least productive of these three clerks, and was not qualified to conduct the full range of payroll operations. Because Smith was fully qualified in all areas of the payroll operation and had been employed longer than Cecil, Smith was retained. Sayers and Cecil were terminated.

### 4. Jean R. Stokley.

Stokley was employed by Lynchburg Foundry on May 7, 1962. Stokley held a variety of non-exempt clerical jobs. Prior to 1980, Stokley was a clerk in the Production Control Department. This Department was entirely eliminated in March, 1980, at which time Stokley and her supervisor, Betty Craig, were assigned other positions. Stokley was transferred to the position of switchboard operator which she held until her termination in October, 1982. During this reduction-in-force, Stokley was displaced by her former supervisor, Betty Craig. Craig had been employed in an exempt salaried position as scheduler of the Medium Castings Foundry. Craig and Stokley were both age 54 at the time of this action, but Craig was approximately 5 months younger than Stokley. However, Craig had been employed by the Foundry longer than Stokley and in higher rated positions. Craig took over the switchboard position, and also continued performing some of her prior duties as a scheduler. Stokley was terminated.

### 5. Ersal W. Alderman.

Alderman was employed by the Foundry on several occasions, and his last continuous service began in 1962. Alderman spent approximately 15 years working as an hourly employee in the Special Foundry. When the Special Foundry closed in 1977, Alderman was transferred to the Medium Castings Foundry. He was promoted to Production Supervisor at the MCF in 1978. His MCF supervisor was Thomas Hudson. In 1980, Alderman was transferred to the Shell Foundry as a Molding Cork Supervisor. When the MCF ceased operations, Thomas Hudson was transferred to the Shell Foundry. Because of his substantial prior experience with shell molding operations, management decided that Hudson

would displace one of the Shell Foundry Production Supervisors. Hudson was age 35 at this time.

The Shell Foundry Supervisors were Alderman (age 46), Richard Quesenberry (age 41), Jewell Higgs (age 39), Ellis Daniely (age 45), and Jerry Clark (age 38). Alderman had been a Supervisor for the shortest length of time and was perceived to be the least qualified Shell Foundry Supervisor. Alderman was terminated on October 31, 1982.

Timely charges of age discrimination were filed with the Equal Employment Opportunity Commission by McDaniel, Hawley, Sayers and Stokley. There is some dispute as to whether Alderman's charge was timely. Apparently Alderman contacted the EEOC by telephone in early 1983. On March 25, 1983, approximately 145 days after his discharge, Alderman sent a handwritten letter to the EEOC discussing his discharge. On March 29, 1983, in response to this letter, the EEOC requested additional information. Alderman's complaint in this action was filed in June, 1983. A telephone conversation with the EEOC was held in early July, and the EEOC sent a draft charge of employment discrimination to Alderman on July 6, 1983. This charge was filed with the EEOC on July 12, 1983, 254 days after Alderman's discharge. Alderman was re-employed by Lynchburg Foundry on June 17, 1983, and remains employed to this date. Because of the disposition of Alderman's claim on the merits, I need not resolve whether his claim with the EEOC was timely filed. I assume, without deciding the issue, that Alderman's March 25, 1983, letter constituted a charge of discrimination under 29 C.F.R. §§ 1626.6 and .8.

## II. Summary Judgment in ADEA Cases

Under Fed.R.Civ.P. 56, summary judgment is to be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of proof on these issues. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court must draw inferences most favorable to the party opposing the motion, *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), and the opposing party is to be given the benefit of all favorable legal theories invoked by the evidence. *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979).

Summary judgment is not inappropriate in age discrimination cases merely because they involve issues of intent and motive. In order to resist a motion for summary judgment, plaintiffs cannot rest on the allegations in their complaint, but must counter the evidence produced by the defendants. *International Woodworkers v. Chesapeake Bay Plywood Co.*, 659 F.2d 1259, 1271 (4th Cir.1981). At a bare minimum, plaintiffs must make out a *prima facie* case. *Palmer v. District Board of Trustees*, 748 F.2d 595, 599, 36 F.E.P. 778, 781 (11th Cir.1984). But even establishment of a *prima facie* case does not mean the case must be submitted to the jury or that summary judgment is improper. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 at n. 12 (4th Cir.1982). As the Eleventh Circuit stated in *Pace v. Southern Railway System:*

> A plaintiff when faced with a motion for summary judgment cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a general issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.

701 F.2d 1383, 1391 (11th Cir.1983).

## III. Elements of a Prima Facie Case

Before considering whether there are any genuine issues of material fact presented, it is first appropriate to determine whether any or all of the Plaintiffs

have made out a *prima facie* case of age discrimination. In *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011 (4th Cir.1983), the Fourth Circuit extensively discussed the requirements of the ADEA in the context of reductions-in-force:

As adapted from the *McDonnell-Douglas* line of cases, the elements of the plaintiff's 'prima facie case' in the usual ADEA case are: (1) the plaintiff is in the protected age group; (2) the plaintiff was discharged or demoted; (3) at the time of discharge or demotion, plaintiff was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class. [citations omitted]. It is readily apparent that the fourth element will not fit well in most reduction-in-force cases. *See McCorstin v. U.S. Steel Corp.,* 621 F.2d 749 (5th Cir.1980). In such cases, the claimant's job is often phased out, and thus he would be unable to point to a replacement. While we do not believe that a claimant in such a case should be precluded for all practical purposes from using the *McDonnell-Douglas* proof scheme by being required to satisfy the fourth element, the claimant should not be permitted to establish a 'prima facie case' by satisfying only the first three elements.

\* \* \* \* \* \*

... The fourth element required to establish a 'prima facie case' of discrimination was intended to demonstrate unequal treatment by the relatively objective evidence of replacement by a member of the non-protected class. *See McCorstin,* 621 F.2d 753. Although a plaintiff in a reduction-in-force case normally is unable to show that he was replaced by such a person, he can nevertheless establish a 'prima facie case' by producing some other evidence that the employer did not treat age neutrally. *See Fink,* [v. Western Electric], *supra,* 708 F.2d [909] at 916–19 [4th Cir.1983];

*Williams v. General Motors Corp.,* 656 F.2d 120, 129–30 (5th Cir.1981), *cert. denied,* 455 U.S. 943 [102 S.Ct. 1439, 71 L.Ed.2d 655] (1982).

713 F.2d 1014, 1015.

The Fourth Circuit has also noted that replacement by a person outside the protected age group is not an essential legal element of an ADEA claim. However, the absolute and relative ages of the claimant and his replacement (if any), are relevant in assessing whether a factual inference of age discrimination is permissible.

We agree with the First Circuit that replacement of a sixty year old by a thirty-five year old or even a forty-five year old within the protected class would be more suggestive of discrimination than replacement of a forty-five year old by a forty-two year old within the protected class or a thirty-nine year old outside it.

*Lovelace v. Sherwin-Williams Co.,* 681 F.2d 242 at fn. 13 (4th Cir.1982).

All five Plaintiffs in this case have made out the first three elements of a *prima facie* case: they are members of the protected group, they were all discharged, and at the time of their discharges they were performing their jobs at a level that was satisfactory to Lynchburg Foundry. The Foundry concedes that these were all good employees who had survived the previous force reductions.

The Foundry admits that Alderman has made out a *prima facie* case for the fourth element. After his discharge, Alderman was replaced by someone outside the protected class. Stokley, on the other hand, was replaced by Betty Craig, who was only four months younger. It would be unreasonable to allow an inference of age discrimination based on this minute difference in ages. As will be explained below, this does not foreclose Stokley from showing direct proof of age discrimination. Rather, it merely means that Stokley is not entitled to the permissible presumption of age discrimination under the *McDonnell-Douglas* formula.

■ The other three Plaintiffs cannot show that they were *replaced* by younger employees because, according to the Foundry, their jobs were entirely eliminated. The evidence is uncontroverted that Troy Hawley's full-time position as messenger was eliminated. Even though some of his prior duties, such as running errands, were assumed by other employees, this does not mean that those employees "replaced" him. *LaGrant v. Gulf & Western Manufacturing Co.*, 748 F.2d 1087, 1090–91 (6th Cir.1984). In the absence of other evidence, Hawley cannot satisfy the fourth element of *McDonnell-Douglas.*

The situation of McDaniel and Sayers is more difficult. The evidence shows that a certain number of positions were eliminated in the Maintenance Department and the Payroll Department. In the Maintenance Department, three of the seven Maintenance Supervisor positions were eliminated; in the Payroll Services Department, two of the three Payroll Services Clerk positions were eliminated. Although there was no actual replacement of these individuals, management made a selection among employees holding the same position as to which employees would be terminated. Sayers, age 58, was terminated while Scotty Smith, age 42, was retained. Similarly, McDaniel, age 55, was terminated while David Forbes, age 36, was retained.

This situation, while not uncommon in reduction-in-force cases, has not been explicitly addressed by the Fourth Circuit Court of Appeals. *Lovelace v. Sherwin-Williams* involved demotions. *Fink v. Western Electric*, 708 F.2d 909 (4th Cir. 1983), involved the termination of an entire program with no jobs or employees retained. 708 F.2d 916. *EEOC v. Western Electric* was a workforce reduction demotion case, and the court intimated that a *prima facie* case might be made if it was shown that persons outside the protected age class were retained in the same positions. 713 F.2d 1011.

There was no one-for-one replacement of McDaniel and Sayers. Nor was there an entire elimination of their positions. Others held equivalent positions with the same title, duties and responsibilities. What management did was eliminate a certain number of positions in a particular job category, then decide which employees would be retained in the remaining positions. Under these circumstances, the retention of younger employees is the functional equivalent of a one-for-one replacement which fulfills the fourth element of a *prima facie* case. *Moore v. Sears, Roebuck and Co.*, 464 F.Supp. 357, 363, n. 6 (N.D.Ga.1979).

In reaching this conclusion, I do not hold that a plaintiff can establish a *prima facie* case merely by claiming that he was capable of handling one or more positions other than his own, yet was not relocated to such a job during a reduction-in-force. *But See Williams v. General Motors*, 656 F.2d 120, 129 (5th Cir.1981) (conscious refusal to consider relocating plaintiff because of his age satisfies final element of *prima facie* case). Troy Hawley may have been qualified for some other position in the Foundry, but his position in the storeroom was entirely eliminated. His situation is different than that of McDaniel and Sayers who held essentially the same position as those retained, but simply lost out in a competition for the positions that remained after the reduction-in-force. Only in the latter case does the *McDonnell-Douglas* presumption apply.

## IV. *Other Evidence of Age Animus*

■ Under *EEOC v. Western Electric*, plaintiffs can establish a *prima facie* in the absence of a *McDonnell-Douglas* presumption by producing some other evidence that age was not treated neutrally. 713 F.2d 1015. This can be done through statistical evidence, evidence of past expressions of age bias or other proof. *Williams v. General Motors Corp.*, 656 F.2d 120, 130 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

The Plaintiffs have not been able to support a presumption of discrimination through statistical evidence. Indeed, the evidence shows that in all the Lynchburg Foundry force reductions since 1979, including the October, 1982 force reductions,

salaried employees under the age of 40 were terminated much more frequently than salaried employees over the age of 40. In the October, 1982 force reduction, 42% of Lynchburg Foundry's under age 40 salaried work force was terminated, while only 19% of the over age 40 salaried work force was terminated. Obviously, this statistical evidence does not support an inference of age animus on the part of Lynchburg Foundry.

Nor have the individual Plaintiffs provided any direct or circumstantial evidence that age bias was a factor in their terminations. All five Plaintiffs have testified that until their terminations each had been treated fairly by the company, and had never experienced age discrimination in the course of his or her employment. The Plaintiffs have presented no examples of age-discriminatory comments or actions by the Foundry or any of its supervisors. Other than the legal presumptions discussed above, the Plaintiffs have pointed to only one area of testimony to support *prima facie* claims of age discrimination. There is evidence that during the deliberations among Lynchburg Foundry managers as to which individuals would be terminated or retained, those managers worked from employee lists which also reflected the birth date and seniority date for each employee. The Plaintiffs allege that these lists were used early in the decision-making process, and provide direct evidence that "the employer did not treat age neutrally". This conclusion is not justified by the record.

The deposition testimony of Donald Carson, Manager of Manufacturing at Lynchburg Foundry, reveals that representatives of Lynchburg Foundry's Human Resources Department were present during one of the last meetings before the terminations. Information on the age and date of seniority of all employees was reviewed and recorded. Carson explained that Human Resources had requested this information so Bernard Tilley got the files and provided the dates. Carson says that these dates were examined because Human Resources wished to review the entire job termination procedure and make sure that there was no discrimination as far as minorities, age, or sex. (Carson Depo. at 36–37).

Evidently more than one set of employee lists was used in the course of the termination process, and Carson says that those lists with numbers beside employees' names (i.e., date of birth and seniority dates) were used toward the *end* of the discussions as to who would be terminated (Carson Depo. at 24–25, 28). The testimony of Ira W. Hoover concerning when the notations as to age and seniority date were added is mixed, and cannot be relied on (compare Hoover Depo. at 72–73 and Hoover Depo. at 79). The only other evidence concerning these age lists was provided by T. J. Coleman, the Radford Plant Manager. Coleman testified that they did have a list that showed employees' age, the date of birth and seniority dates, and that they got such a list from Human Resources (Coleman Depo. at 39). Human Resources had input into the termination process (Coleman Depo. at 27).

I do not believe that this testimony, standing alone, provides the Plaintiffs with a *prima facie* case of age discrimination. When all inferences are drawn favorably to the Plaintiffs, the evidence shows that the ages of the employees were reviewed when selecting employees for termination. The Plaintiffs would have the Court strictly interpret the language of the Fourth Circuit in *EEOC v. Western Electric* and rule that *any* use of age in the termination process establishes a *prima facie* case. Such a strict construction would ignore the entire purpose behind the Circuit Court's opinion—to explain why a plaintiff has to prove something more than the first three elements before a *prima facie* case is established. 713 F.2d 1014.

There are many non-neutral ways in which age can be used which are not discriminatory. Age can be used in a favorable fashion where the older employee is preferred to the younger employee. Age can also be used in a purely benign fashion, such as when the ages of the employees

are analyzed to insure that there is no age discrimination. In either case, even though age is not used "neutrally", the use of age as a factor cannot be considered to give rise to a presumption of age discrimination.

The intent of the Fourth Circuit in the *EEOC v. Western Electric* opinion is clear when considered together with the authorities cited by the Court. The Circuit Court was heavily influenced by the Fifth Circuit's opinion in *Williams v. General Motors Corp.*:

> Our third requirement simply insists that a plaintiff produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age or (2) defendant regarded age as a negative factor in such consideration.

*Id.* at 129–30. *See also Fink v. Western Electric Co.*, 708 F.2d 916–19.

The record only shows that lists including the employees' ages were available and used during the termination process. There is no evidence that these lists were used in a discriminatory manner. On the contrary, the record supports the Foundry's claim that these lists were used as a check on discriminatory practices. Thus, I cannot find that the use of the employee lists is evidence to support the fourth element of a *prima facie* case.

Plaintiffs also rely on Coleman's testimony (at pp. 36–39 of his deposition) where he said that the Foundry considered the employees' ages. Although Plaintiffs' counsel strenuously tried to determine what Coleman meant by this comment, it is not clear what use, if any, was made of the employees' ages. Admittedly, it is possible to draw an inference that McDaniel's age was used in a negative manner, but only if Coleman's responses are taken out of context. Coleman also testified that they were not trying to discriminate against McDaniel or anybody else because of age. (Coleman Depo. at 39). Coleman later testified on

cross-examination that he would not be a party to any age discrimination, and if he thought discrimination was present, he would not have allowed it. (Coleman Depo. at 72–73). Taken as a whole, this testimony lends little weight to the Plaintiffs' claims.

Thus, in the absence of any other evidence of discriminatory intent, or negative use of age, only three of the Plaintiffs have made out a *prima facie* case: Alderman, under the *McDonnell-Douglas* formula, and McDaniel and Sayers, based upon a modified *McDonnell-Douglas* formula for use in force reductions when younger employees are retained in equivalent positions. Hawley and Stokley have not made out a *prima facie* case under *EEOC v. Western Electric*.

## V. Lynchburg Foundry's Business Justifications

■ In response to the Plaintiffs' showing of a *prima facie* case, Lynchburg Foundry has proffered evidence that these employees were dismissed for legitimate, non-discriminatory business reasons. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Articulation of legitimate, non-discriminatory reasons for these decisions eliminates any presumption of age discrimination, and places on the plaintiff the burden of proving the ultimate issue. *United States Postal Service Board v. Aikens*, 461 U.S. 941, 103 S.Ct. 2117, 77 L.Ed.2d 1299 (1983).

Lynchburg Foundry contends that these employment decisions were made based upon management's evaluation of the relative qualifications of each employee, as well as the needs of the Foundry after the reductions-in-force.

■ Contrary to the Defendants' assertion, it is *not* the decided law in this Circuit that where relative qualifications are advanced as the non-discriminatory reason for an employment decision the *plaintiff* bears the burden of establishing that she was better qualified than the retained em-

ployee. That rule has been limited to hiring cases, *Anderson v. Bessemer City,* 717 F.2d 149, 153 (4th Cir.1983), and promotion cases, *Young v. Lehman,* 748 F.2d 194, 198 (4th Cir.1984). The Circuit Court has not applied this standard to discharge cases even though the recent case of *Gairola v. Commonwealth of Virginia, Department of General Services,* 753 F.2d 1281 (4th Cir.1985) provided an opportunity to do so. I do not believe it is appropriate to place this burden on the discharged plaintiff. However, the defense is still a valid one. The court's conclusions in *EEOC v. Western Electric* regarding demotions during a reduction-in-force should be applied to the termination decisions in this case:

> In each individual case, the area supervisor responsible for the demotion testified concerning legitimate business reasons for each demotion. They testified that while most of the supervisors demoted were good supervisors, poor business conditions required a reduction in the number of supervisors, and the supervisors selected were less qualified, based on their performance and expertise, than those supervisors retained. We find no reasons legally sufficient to discredit this testimony. It is true that the trial court held that the qualification assessments were subjective. That appellation, however, does not convert an otherwise legitimate reason into an illegal one. [citations omitted].

713 F.2d 1016.

Lynchburg Foundry has defended its decisions on similar grounds, and has articulated the considerations that went into each of these dismissals.

Thomas McDaniel had no specialized training or certification in technical electrical or machinist-mechanic work. His own perceptions of his ability to perform as well as those certified employees is irrelevant. *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). The Foundry felt it needed to retain two certified supervisors, as well as the second electrical supervisor on special assignment. McDaniel was considered to be one of the three generalists. Sowers

(age 51), with 14 more years experience than McDaniel, was retained. The Lynchburg Foundry managers say they placed a great deal of weight on the certification program, and that is why Forbes, Byrd and Jones were retained instead of McDaniel.

The testimony of two of Iris Sayers' supervisors, Lyons and Willis, is that Sayers was the slowest and least productive of the three Payroll Services Clerks remaining in October, 1982. Only one clerk was to be retained, and would have to perform all the duties in the department in an efficient and speedy manner. Willis felt that Cecil (age 33) was the most efficient, but she had less seniority than Smith (age 42). Smith was retained because it was felt she was better qualified than Sayers to perform the work required.

Ersal Alderman (age 46) was replaced by his former supervisor, Thomas Hudson (age 35). Hudson was transferred to the Shell Foundry when the MCF was closed. Hudson was a college graduate with extensive supervisory experience and experience in shell molding operations. Lynchburg Foundry decided to "bump" one of the existing shell foundry production supervisors to make a place for Hudson. Alderman had been a supervisor for less time than any of the other shell foundry production supervisors. As the person with the least supervisory experience, he was dismissed.

### VI. *The Appropriateness of Summary Judgment*

The shifting burdens of production set out by the *McDonnell-Douglas/Burdine* formula are also applicable to a motion for summary judgment. Obviously a plaintiff is not required to *prove* the employer's articulated business reason is pretextual at this stage of the suit. He is, however, required to present sufficient rebuttal to create a genuine issue of material fact. *Pace v. Southern Railway System,* 701 F.2d 1391. The ultimate issue which the plaintiff must prove is that he suffered an unfavorable employment action under circumstances in which the employee's age was a determining factor in the action in

the sense that "but for" his employer's motive to discriminate against him because of his age, he would not have suffered the action. *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 238. If the plaintiff cannot produce sufficient evidence to create an inference of discriminatory motive, then the employer's articulated business reasons remain unrebutted, and summary judgment is appropriate. *Goode v. Department of Health, Commonwealth of Virginia,* 758 F.2d 647 (4th Cir.1985) (UP); *Steckl v. Motorola, Inc.,* 703 F.2d 392 (9th Cir.1983).

The Plaintiffs have hinged their rebuttal on two arguments. The first is a legal standard adopted by some district courts which precludes summary judgment if an employer presents evidence of a legitimate business justification. The reasoning of these courts is that the plaintiff should be given an opportunity to cross examine the defendant before the finder of fact. *Bower v. State Equip. Div.,* 31 F.E.P. Cases 825 (W.D.Pa.1983). This standard is nothing more than a restatement of Fed.R.Civ.P. 56—summary judgment is not appropriate where there are genuine issues of material fact in dispute.

The Plaintiffs' second argument is that there *is* direct evidence of discrimination which creates a genuine issue as to material facts. The evidence they rely on is the testimony of Coleman, and the use of employee lists which included the employees' ages. As I made clear above, this evidence provides very little support to the Plaintiffs' case. The lists *were* used, but the record does not support an inference that they were used in a negative way. The same conclusion applies to Coleman's testimony.

There may be some factual issues that are in dispute. For example, it is not clear precisely when the information about the employees ages and seniority dates was first considered. But these are not *material* facts because there is no evidence to rebut Lynchburg Foundry's explanation of how and *why* this information was considered. Black's Law Dictionary defines a "material fact" as follows:

A fact is "material" and precludes a grant of summary judgment if proof of that fact would have effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle of law to the rights and obligations of the parties. [citations omitted].

Black's Law Dictionary 881 (6th Ed. 1979), *cited in Kendall v. Hoover Co.,* 751 F.2d 171, 174, 36 F.E.P. Cases 891, 893 (6th Cir.1984).

If this case were to go to trial, and the evidence developed as it has been during discovery, this Court would be compelled to enter a directed verdict for the Defendants at the close of the evidence. There is substantial evidence that the Foundry's articulated justifications for these dismissals are not pretextual. All five Plaintiffs knew that Lynchburg Foundry was in economic trouble, and that numerous qualified employees had already been laid off. The statistical evidence supports the Foundry's position that age animus was not a factor in the terminations. The Foundry's reasons for choosing which employees would be retained are "clear and reasonably specific". *Burdine,* 450 U.S. 258, 101 S.Ct. 1096. This is particularly true for McDaniel, who lacked specific qualifications, and for Alderman, who was the least senior supervisor in his department. The reasons for Sayers' dismissal are more subjective, but the Foundry has stated that speed and efficiency were the decisive factors, and such decisions must be accorded deference.

Where the evidence is so overwhelming that these dismissals were not based on age discrimination, a directed verdict would be proper. *Gairolo,* 753 F.2d 1288. A jury would not be permitted to examine an employer's reasons for the discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities. Their inquiry is limited to age discrimination. *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983). In light of the extensive discovery already conducted in this case, I

**362**

find it unlikely that additional evidence would be developed at trial which would change the present posture of the evidence. I am not unmindful of the Plaintiffs' right to cross-examine the Defendants on the legitimacy of their business justification. That right was exercised during depositions to no avail. In the absence of any evidence of age animus on the part of Lynchburg Foundry, I do not believe there is a sufficient question of credibility to justify a trial of this matter.

There is no genuine issue as to any material fact, and both Defendant Lynchburg Foundry and Mead Corporation are entitled to judgment as a matter of law. Having resolved this case on the merits, there is no need to address the Defendants' other defenses.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.