878 F.2d 382
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shirley MITCHELL, Plaintiff-Appellant,
v.
The TOLEDO HOSPITAL, Defendant-Appellee.
 No. 88-3567.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1989.
 
 Before KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Shirley Mitchell ("Mitchell"), a black woman who was denied a job promotion, brought this civil rights action against her employer, defendant Toledo Hospital ("defendant"). Mitchell complained that the defendant acted in violation of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. Secs. 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. ("Title VII"); and the Age Discrimination in Employment Act, 29 U.S.C. Sec. 623 et seq. ("ADEA"). The district court granted summary judgment in favor of the defendant. For the following reasons, we AFFIRM.
 
 I.
 A.
 
 2
 In 1959, Mitchell began her employment in defendant's business office. In October 1984, she applied for the position of "Billing Analyst--Business Office Clerk." At the time she submitted her application, Mitchell was forty-six years old. Mitchell and four other candidates for the position were evaluated by Lori A. Nolan ("Nolan"), who was then employed by defendant as Senior Analyst of Billing and Collection. In her deposition, Nolan testified that she reviewed the previous job descriptions submitted by the candidates to determine each individual's experience, skills and knowledge level. Nolan explained that she asked each candidate the same interview questions and selected Connie Kortgoede ("Kortgoede") over Mitchell because she thought Kortgoede was the best candidate for the position.
 
 
 3
 Kortgoede is a thirty-two year old white woman. Nolan testified, however, that she made the decision to select Kortgoede without considering the race or age of any of the candidates. Nolan gave three justifications for her selection of Kortgoede: first, during the interview for the billing analyst position, Kortgoede handled the hypothetical job situation questions in a manner that satisfied the job requirements; second, Kortgoede had been previously trained for approximately 75% of the job functions; and third, Kortgoede revealed a friendly, helpful and positive attitude in the interview which indicated her suitability for interaction with the public.
 
 
 4
 At her deposition, Mitchell testified that she had trained Kortgoede to work in defendant's business office. Mitchell stated that prior to the interviews for the billing analyst position, defendant's supervisors had not used "attitude" as a criteria for employee promotion. Mitchell then testified that she did not know the identity, race or age of the other three candidates for the job. Mitchell also admitted that she did not know Kortgoede's qualifications for the job. Finally, when defendant asked Mitchell for the names of the people who she thought had discriminated against her, she did not identify Nolan.
 
 B.
 
 5
 Mitchell filed her complaint on April 11, 1986, alleging that defendant's failure to select her for the billing analyst position constituted discrimination on the basis of race and age. Defendant moved, on January 12, 1987, to dismiss Mitchell's Secs. 1981 and 1983 claims. On February 11, 1987, the district court, sua sponte, issued an order granting Mitchell three weeks to prepare a response. The district court subsequently granted Mitchell an additional three weeks to respond. On April 29, 1987, having not received a response from Mitchell at the end of the second extension period, the magistrate issued a report and recommendation, advising that Mitchell's Secs. 1981 and 1983 claims should be dismissed. The magistrate also notified the parties that they had ten days to object to the report and recommendation. Mitchell failed to file objections.
 
 
 6
 On June 19, 1987, the district court granted defendant's motion to dismiss Mitchell's Secs. 1981 and 1983 claims. The district court also adopted the report and recommendation of the magistrate that: first, advised dismissal of Mitchell's Secs. 1981 and 1983 claims for want of prosecution, pursuant to Federal Rule of Civil Procedure 41(b); second, advised dismissal of Mitchell's Sec. 1981 claim because it was barred by the statute of limitations; and third, advised dismissal of Mitchell's Sec. 1983 claim because there was no basis to find that the defendant acted under color of state law.[1]
 
 
 7
 Defendant filed, on January 29, 1988, a motion for summary judgment with respect to Mitchell's remaining claims of race and age discrimination. On April 22, 1988, the magistrate issued a report and recommendation, advising that defendant's motion should be granted. On May 25, 1988, after Mitchell submitted her objections, the district court adopted the magistrate's report and recommendation, and ordered summary judgment in favor of the defendant. The court made no determination as to whether Mitchell established a prima facie case of discrimination. The district court found, however, that defendant had articulated a legitimate nondiscriminatory reason for the alleged discriminatory conduct. The court held that Mitchell had failed to show that a genuine issue of material fact existed as to whether defendant's articulated reasons for the employment decision were pretextual. Thus, the district court dismissed Mitchell's case.
 
 
 8
 Mitchell filed an appeal with this court on June 25, 1988.
 
 II.
 
 9
 Preliminarily, we note that a reviewing court may only overturn the district court's findings of fact when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). However, this "deferential standard does not apply to conclusions of law, ... or to factual findings which result from the application of incorrect legal principles." Haskins v. United States Dept. of Army, 808 F.2d 1192, 1197 (6th Cir.1987), cert. denied, 108 S.Ct. 68 (1987) (citations omitted).
 
 
 10
 In reviewing the district court's grant of summary judgment, we note that a moving party may discharge his burden by showing to the court that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Where the moving party has carried [his] burden of showing that the pleadings, depositions, ... and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987).
 
 A.
 
 11
 To analyze Mitchell's Title VII claims, the district court applied the evidentiary framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[2] Mitchell contends, however, that the district court was required to apply the Title VII dual motive analysis articulated by this court in Terbovitz v. Fiscal Court of Adair County, 825 F.2d 111 (6th Cir.1987); Haskins v. United States Dept. of Army, 808 F.2d 1192, 1197 (6th Cir.1987), cert. denied, 108 S.Ct. 68 (1987); Blalock v. Metals Trades, Inc., 775 F.2d 703 (6th Cir.1985). We disagree.
 
 
 12
 The McDonnell Douglas formula assumes that a single motive can be found to explain a defendant employer's decision to take adverse employment action against a plaintiff employee. See, e.g., Haskins, 808 F.2d at 1197. In Terbovitz, we explained that:
 
 
 13
 The shifting burdens of McDonnell Douglas are designed to determine which motive--the alleged unlawful discrimination or the employer's asserted nondiscriminatory justification--is the "true" reason for the employer's adverse employment action. The plaintiff at all times retains the burden of proving that the discriminatory motivation was more likely than not the "true" reason for the employer's decision.
 
 
 14
 Terbovitz, 825 F.2d at 114 (citations omitted).
 
 
 15
 In the McDonnell Douglas framework, the Title VII plaintiff draws an inference of discrimination from the prima facie case. However, if the plaintiff presents credible, direct evidence of discriminatory animus, then the discrimination need not be inferred and the McDonnell Douglas framework is inapplicable. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985). In Blalock, we held that "[d]irect evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock, 775 F.2d at 707. Under the Title VII dual motive analysis, the plaintiff presents direct evidence of discrimination. If this evidence is credible, then the district court will find facts requiring the conclusion that the defendant's employment decisions were unlawfully motivated. Id. at 707-10.
 
 
 16
 To avoid liability under the Title VII dual motive analysis, the defendant must do more than articulate a nondiscriminatory justification for the adverse employment decision, as required by McDonnell Douglas. Terbovitz, 825 F.2d at 115. In Price Waterhouse v. Hopkins, 57 U.S.L.W. 4469 (1989), the Supreme Court held that "when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." Id. at 4478 (Brennan, J., plurality opinion). Thus, once the district court accepts the Title VII plaintiff's direct evidence of discrimination, the burden of proof shifts to the defendant to prove "that the adverse employment action would have been taken even in the absence of the impermissible motivation." Blalock, 775 F.2d at 712.
 
 
 17
 In the case at bar, Mitchell has merely alleged, without presenting direct evidence, that her race and age were causative factors in defendant's failure to promote her to the billing analyst position. In addition, Mitchell's credibility was severely undermined by her failure to identify Nolan as the discriminator, since Nolan actually made the adverse employment decision. Moreover, Mitchell has presented no probative evidence indicating that she was better qualified than Kortgoede, the candidate selected. Thus, because Mitchell failed to present credible, direct evidence of discrimination, there was no justification to shift the burden of proof to the defendant or to apply the Title VII dual motive analysis to Mitchell's case.
 
 
 18
 Returning to the McDonnell Douglas evidentiary framework, Mitchell must show that her race or age was the "but for" cause of her failure to receive the billing analyst position. When a plaintiff establishes that a "defendant's discriminatory intent was more likely than not the basis of the adverse employment action," then the plaintiff satisfies the "but for" causation standard and her burden of proof under McDonnell Douglas. Blalock, 775 F.2d at 709 (citations omitted). Mitchell, however, has done no more than allege discrimination. In response, defendant has produced uncontradicted and probative evidence that its decision maker, Nolan, was not unlawfully motivated, but was striving to select the most qualified candidate for the position. Thus, under the McDonnell Douglas framework, the district court properly found that Mitchell had not raised a genuine issue of material fact regarding the legitimacy of defendant's proffered reasons for the adverse employment decision.
 
 B.
 
 19
 Mitchell also argues that summary judgment should not have been granted to dismiss her claims, since: first, she had previously established a prima facie case of age and race discrimination; and second, she had intended to prove that the employer's stated reasons for the adverse employment decision were mere pretext. We disagree. Even after establishing a prima facie case of discrimination, plaintiffs in both Title VII and "ADEA cases must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983) (granting summary judgment against ADEA plaintiff who produced no evidence to rebut employer's "business reasons" for the employment decision). See also Boddy v. Dean, 821 F.2d 346, 348-49 (6th Cir.1987) (granting summary judgment against Title VII plaintiff who "produced nothing but speculation and hypothesis" to rebut employer's nondiscriminatory justification for the employment decision).
 
 
 20
 Mitchell correctly argues that courts should be reluctant to grant summary judgment in cases where the motivation and intent of the parties are at issue. See Douglas v. Anderson, 656 F.2d 528, 535 (9th Cir.1981). The Supreme Court, however, has concluded that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249 (1986) (emphasis added). Thus, a discrimination case should only proceed to trial where there is some basic evidentiary fact to permit the district court to draw a reasonable and permissible inference of the employer's intent to discriminate. See Nash v. Jacqueline Cochran, Inc., 548 F.Supp. 676, 680 (S.D.N.Y.1982). Where the plaintiff cannot "produce sufficient evidence to create an inference of discriminatory motive, [and] the employer's articulated business reasons remain unrebutted, [then] summary judgment is appropriate." McDaniel v. Mead Corp., 622 F.Supp. 351, 361 (W.D.Va.1985), aff'd, 818 F.2d 861 (4th Cir.1987).
 
 
 21
 We assume, without finding, that Mitchell has established a prima facie case of age and race discrimination. However, merely establishing a prima facie case does not entitle Mitchell to a trial in this action. See, e.g., Steckl, 703 F.2d at 393-94 (indicating that "the use of summary procedures is proper in appropriate discrimination actions even when plaintiff has established a prima facie case"). Under the McDonnell Douglas framework, Mitchell has failed to raise a genuine issue of material fact as to whether the business reasons offered to justify the employment decision were the true reasons, or defendant's mere pretext for age and race discrimination. Burdine, 450 U.S. at 252-53; Douglas, 656 F.2d at 535. Mitchell produced no evidence which would show pretext or undermine the credibility of Nolan's testimony. In Mitchell's case, as in Kephart v. Institute of Gas Technology, 630 F.2d 1217 (7th Cir.1980), cert. denied, 450 U.S. 959 (1981), the "plaintiff had no indications of motive and intent, supportive of [her] position, to put on the scales for weighing." 630 F.2d at 1218. Finally, Mitchell's claims that defendant failed to select her for the billing analyst position "because of discriminatory motivation and intent were 'wholly empty' and therefore insufficient to prevent summary judgment." Steckl, 703 F.2d at 393 (quoting Kephart, 630 F.2d at 1218).
 
 
 22
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Although Mitchell tries to revive her Secs. 1981 and 1983 claims on appeal, her arguments are without merit
 Mitchell initially argues that the district court improperly assigned her case to a magistrate without her consent. A litigant, however, need not agree to the exercise of a magistrate's jurisdiction on pretrial matters referred by a district court judge. 28 U.S.C. Sec. 636(b)(1); Fed.R.Civ.P. 72(b). In addition, Mitchell's failure to issue a timely objection to the referral of her case to the magistrate "constitute[d] a waiver of [her] right to complain about the reference procedure followed." Hawkins v. Ohio Bell Telephone Co., 785 F.2d 308 (6th Cir.1986) (unpublished per curiam). See also Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 956 (6th Cir.1985), cert. denied, 479 U.S. 380 (1986). Thus, we conclude that the referral of Mitchell's case to a magistrate does not justify a reversal.
 On appeal, Mitchell also takes exception to the June 19, 1987, order of the district court that granted defendant's motion to dismiss her civil rights claims. We are persuaded, however, that the district court properly granted defendant's motion to dismiss Mitchell's claims based on 42 U.S.C. Secs. 1981 and 1983. First, we note that Mitchell did not present a viable Sec. 1981 claim because she failed to prove that defendant's articulated business reasons for the adverse employment decision were untrue or that defendant acted with discriminatory intent. See, e.g., Jackson v. RKO Bottler of Toledo, Inc., 743 F.2d 370, 378-79 (6th Cir.1984) (applying the McDonnell Douglas analysis to both Title VII and Sec. 1981 claims), cert. denied, 478 U.S. 1006 (1986). Second, the district court did not err in adopting the magistrate's report that absent proof that defendant acted under color of state law, Mitchell failed to state a cause of action under Sec. 1983. See, e.g., Graham v. NCAA, 804 F.2d 953, 958 (6th Cir.1986). Third, the district court did not abuse its discretion by adopting the magistrate's recommendation to dismiss Mitchell's Secs. 1981 and 1983 claims for failure to prosecute. See Fed.R.Civ.P. 41(b); Coston v. Detroit Edison Co., 789 F.2d 377, 379 (6th Cir.1986). The district court issued two orders granting Mitchell additional time to respond to defendant's motion to dismiss. Because Mitchell ignored the district court's orders; failed to respond to the defendant's motion; and failed to object to the magistrate's report and recommendation: the dismissal of Mitchell's civil rights claims for want of prosecution was certainly an action "within the permissible range of the [district] court's discretion." Link v. Wabash R.R., 370 U.S. 626, 633 (1962). Having concluded that Mitchell's Secs. 1981 and 1983 claims were properly dismissed for failure to prosecute, we need not determine whether the claims were filed outside the applicable period of limitations.
 
 
 [2]
 The McDonnell Douglas/Burdine evidentiary framework provides that:
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 Burdine, 450 U.S. at 252-53 (citations omitted). To establish a prima facie case of discrimination, the plaintiff must show:
 (i) that [she] belongs to a [protected class]; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 McDonnell Douglas, 411 U.S. at 802 (footnote omitted).