956 F.2d 1162
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John D. HALL; Allen R. Patrick, Plaintiffs-Appellants,
v.
WESTMORELAND COAL COMPANY, INCORPORATED, Defendant-Appellee.
 No. 91-2711.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 25, 1992.
Decided March 3, 1992.
 
 Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. Samuel G. Wilson, District Judge. (CA-90-23-B)
 John S. McLellan, Kingsport, Tenn., for appellant.
 Thomas P. Gies, Mark E. Baker, Crowell & Moring, Washington, D.C., Suzan E. Moore, Assistant General Counsel, Westmoreland Coal Company, Big Stone Gap, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before K.K. HALL, PHILLIPS and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John D. Hall and Allen R. Patrick, plaintiffs below, appeal from the entry of summary judgment in favor of Westmoreland Coal Company ("Westmoreland") by the United States District Court for the Western District of Virginia. Hall and Patrick alleged below that Westmoreland's termination of their employment violated both the terms of their contract and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Since their appeal raises only the issue of whether their contractual rights were violated and makes no reference to their age discrimination claim, we consider only the grant of summary judgment as to their contract claim.
 
 I.
 
 2
 Hall and Patrick were both section foremen at Westmoreland's Prescott Mine in Virginia, where two coal production units were in operation. Each served as supervisor of a coal mining unit during a specific shift, and each was discharged in February, 1989.
 
 
 3
 According to affidavits of Westmoreland employees,[1] Westmoreland was hit by the economic depression in the coal market during the 1980's. Nearly half of the Westmoreland workforce was discharged through three reductions-in-force, undertaken in 1985, 1988, and 1989. The loss of certain long-term contracts to supply coal, due to declining coal prices, combined with the concomitant need to sell a greater percentage of coal at the lower market price, resulted in a loss of four million dollars for the company's Virginia Division in 1988. That was the principal reason adduced for the company's decrease in its workforce in March, 1988.
 
 
 4
 In a further effort to reduce costs, the Virginia Division undertook another reorganization and reduction-in-force in February, 1989, using the same guidelines it had utilized in March, 1988. The fourstep procedure included (1) evaluation of each employee by a department head and mine superintendent, pursuant to uniform evaluation criteria[2] devised by senior management; (2) ranking of each employee by job category, in relation to the number of positions to be retained; (3) placement of those employees who would be displaced by the evaluation and ranking process into a "job bank," followed by the reevaluation of each department to determine whether any employees in the "job bank" were more qualified than employees who were otherwise retained based upon the initial evaluation and ranking; and (4) review by senior management and human resources personnel. Operations at the Prescott Mine were to be reduced from two continuous miner units to one, with elimination of the positions of three section foremen, a section/maintenance foreman, and an assistant general mine foreman. In the ranking and evaluation for the two remaining section foremen positions, Hall ranked fourth and Patrick ranked sixth.[3] Another section foreman who ranked higher than Hall and Patrick was selected as one of the section foremen. An assistant general mine foreman whose position was eliminated and who had been placed in the "job bank" was retained as the other section foreman.
 
 
 5
 Neither Hall nor Patrick has pointed to evidence which would indicate that they were more qualified than the two who were retained as section foremen. On at least four occasions between 1982 and 1989, Patrick had been subject to disciplinary action by Westmoreland, including suspensions for failure to comply with safety procedures, written reprimands, and disciplinary counseling sessions. Hall was not considered to be as well-rounded in his job skills as the two section foremen who were retained by Westmoreland.
 
 
 6
 Hall and Patrick filed an action, alleging that Westmoreland terminated them unlawfully because of their age, in violation of ADEA, and in breach of an employment contract prohibiting termination without just cause. The wrongful discharge claim was based upon statements in an "Employee Relations Manual" issued by Westmoreland, which Hall and Patrick contend is a binding employment contract. The manual provides, in relevant part:
 
 
 7
 It is the philosophy of Westmoreland Coal Company to promote a work environment that fosters a sense of fairness and job security....
 
 
 8
 When discharge becomes necessary, it is further our philosophy that discharge will be only for cause. Discharge for cause includes but is not limited to violations of Company policies, procedures or rules, violations of State or Federal laws or regulations, unsatisfactory job performance, excessive absenteeism, theft of Company property, and the use of alcohol and/or controlled substances on Company property.
 
 
 9
 Notwithstanding anything stated herein, management reserves the right to reduce the workforce due to economic necessity.
 
 
 10
 The manual also states that it is not intended to be "a guarantee of continued employment," nor is it intended to "create a contract of employment."
 
 
 11
 Westmoreland filed a motion for summary judgment, which the district court granted as to both the age discrimination claim[4] and the contract claim, in an order and memorandum opinion dated September 25, 1991. Regarding the contract claim, the court assumed without deciding that Hall and Patrick could legitimately expect that the Employee Relations Manual set forth provisions by which Westmoreland was bound. The court found that the circumstances of their discharge satisfied the manual's express provision that employees could be terminated for "economic necessity."
 
 II.
 
 12
 In reviewing the district court's grant of summary judgment, we apply the same standard applied by the district court under Federal Rule of Civil Procedure 56(c). Ottensmeyer v. Chesapeake & Potomac Tel. Co., 756 F.2d 986, 992 n. 12 (4th Cir.1985). Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 13
 On appeal, Hall and Patrick primarily have emphasized the status of the Employee Relations Manual, arguing that the "handbook is plainly a contractual adoption of the ... just cause standard ..., [thereby] eliminating discharges which are not 'just' and which have no 'cause.' " We need not consider, however, whether the evidence is sufficient to create a genuine issue of fact as to whether Westmoreland was contractually bound by the terms of the Employee Relations Manual. Even if we assume that Westmoreland was bound by the manual, Hall and Patrick have failed to produce sufficient evidence to support a finding that the termination of their employment violated those employment terms. That failure to establish a material element of their claim renders summary judgment appropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 14
 Notwithstanding the stated philosophy that employees would only be discharged for "cause," the manual also states that employees may be discharged "due to economic necessity." Westmoreland produced evidence to establish that economic necessity was the motivation for the employment terminations implemented in February, 1989. Several employees attested that the four million dollar loss in the company's Virginia Division in 1988, caused by the loss of long-term contracts and the sale of coal at reduced market prices, prompted the costcutting reorganization and reduction-in-force plan undertaken in 1989.
 
 
 15
 The district court found that Hall and Patrick had failed to produce evidence to establish that Westmoreland's stated reasons were pretextual. Refusing to "second guess" Westmoreland's analysis of its economic position, the court concluded that Westmoreland's articulated reasons constituted an "economic necessity," in response to which the company had expressly retained the right to discharge employees.
 
 
 16
 The only evidence produced by Hall and Patrick to controvert that justification is found in their joint affidavit. They contended therein that the coal market had not suffered from an economic depression. That conclusion was based on their "visual assessment" of the mined coal at one mine and their belief that "this is a fair example of the coal produced at other mines owned and operated by Westmoreland in Virginia." Therefore, they have argued, they could only be dismissed "for cause," as stated in the Employee Relations Manual, and no such "cause" was present.
 
 
 17
 We agree with the district court's conclusion. We find no evidence to support a finding that Westmoreland's stated reason regarding an economic need to reduce its workforce was actually a pretext for some other motive; no genuine issue of fact exists. Instead, the evidence indicates that the company responded to that perceived economic need by carefully designing an evaluation and ranking procedure to retain those employees most qualified to fill the remaining positions. In the face of evidence supporting the proffered justification and in the absence of evidence suggesting pretext or bad faith, interference with management's discretion to discharge personnel for a reason which was expressly enumerated in an employee manual is not within the court's province. See, e.g., Seabolt v. Westmoreland Coal Co., 703 F.Supp. 1235, 1240 (W.D.Va.1989), aff'd sub nom. Allman v. Westmoreland Coal Co., 898 F.2d 144 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 136 (1990); McDaniel v. Mead Corp., 622 F.Supp. 351, 361 (W.D.Va.1985), aff'd, 818 F.2d 861 (4th Cir.1987); Cox v. Resilient Flooring Div. of Congoleum Corp., 638 F.Supp. 726, 732 (C.D.Cal.1986). The district court properly concluded that summary judgment in favor of Westmoreland was appropriate, and, therefore, the decision is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The employees who submitted affidavits include the President of Westmoreland's Virginia Division, the Human Resources Manager of the Virginia Division, the Mine Superintendent of the Prescott Mine, the Assistant Vice-President of Human Resources for Westmoreland, and the Manager of Personnel and Benefits for Westmoreland
 
 
 [2]
 The nine evaluation criteria were attendance, accident history, length of service, job performance, skills, education, type of certification, experience, and participation in training teams and mine rescue efforts. Department heads and mine superintendents were instructed in writing to evaluate employees "without regard to their race, color, sex, age, national origin, religion, handicap, or veteran status."
 
 
 [3]
 Both were then placed in the "job bank" to be considered for other positions
 
 
 [4]
 The district court noted that Hall and Patrick had made no reference to their age discrimination claim in their brief in opposition to the summary judgment motion. From their depositions, it appears that the only basis for the claim is that the two who were retained as section foremen were both younger than Hall and Patrick. Nonetheless, the court considered the claim. It found that even if Hall and Patrick could establish a prima facie case of age discrimination, Westmoreland had articulated non-discriminatory reasons for the discharge, and there was no evidence that those reasons were pretextual